George B. HAMILTON, III; Hamilton–Encinos Minerals, Ltd.; Sharon J. Hamilton; and Dream Leader Minerals, Ltd.; Appellants,

v.

MORRIS RESOURCES, LTD.; Florabelle D. Wheat; George Dinn; The Estate of Mary Beth Gregg; Carrie Francis Burton; Dinn Mineral Trusts; Coates Energy Trust; Coates Energy Interests, Ltd.; and EOG Resources, Inc.; Appellees.

No. 04–05–00904–CV.

Court of Appeals of Texas, San Antonio.

Feb. 14, 2007.

Rehearing Overruled April 5, 2007.

Baldemar Garcia, Jr., Martha Cigarroa De Llano, Person, Whitworth, Borchers & Morales, L.L.P., Ricardo D. Palacios, Laredo, Frank Armstrong, John C. Heymann, Upton Mickits Hardwick & Heymann, L.L.P., Corpus Christi, Ellen B. Mitchell, Cox Smith Matthews Incorporated, San Antonio, for appellants.

John F. Carroll, Law Office of John Carroll, John Christian Amberson, John Christian Amberson, P.C., V.E. Lanfear, Jr., San Antonio, Rolando Cantu, Rolando Cantu & Associates, P.L.L.C., McAllen, Jonathan D. Baughman, Michael B. Silva, Scott S. Cooley, McGinnis Lochridge & Kilgore, L.L.P., Houston, Marshall Boykin, III, Lucinda J. Garcia, Wood, Boykin & Wolter, P.C., Corpus Christi, J.G. Adami, Jr., Alice, for appellees.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

This dispute involves the interpretation of several oil and gas deeds executed in the 1920s and 1930s. At issue is whether the deeds resulted in a grant of one mineral estate or a grant of two mineral estates differing in magnitude and duration. We affirm.

## BACKGROUND

On June 8, 1926, John and Matilda Richardson ("the Richardsons") executed two deeds, each conveying to George H. Coates a "1/4th interest in and to all the oil, gas and other minerals in and under and that may be produced from the following described lands situated in Duval County, Texas ... containing 320 acres more or less." The total land under both deeds amounted to approximately 640 acres.[1]

---

1. These two deeds will be collectively referred to as the Richardson/Coates Deeds. Some of appellants/defendants below are successors-in-interest to the original grantors: (1) George Hamilton and Hamilton–Encinos Mineral, Ltd. (collectively "Hamilton–Encinos") are successors-in-interest to part of the original grantors' interest in the land de-

The Richardson/Coates Deeds are identical, except that one deed covers the north 320 acres of the described land and was subject to a lease with Co–Operative Drilling Company, while the other deed covers the south 320 acres of the described land and was subject to a lease with Associated Oil Company. Both leases provided for a 1/8 royalty interest. On July 14, 1926, George H. Coates executed three deeds, conveying to J.T. Dinn, Albert Dinn, and John G. Morris each a "2/9th of 1/4th interest in and to all the oil, gas and other minerals in and under and that may be produced from the following described lands situated in Duval County, Texas … containing 640 acres more or less…."[2]

On May 3, 1932, all parties to the Richardson/Coates Deeds and the Coates/Dinn Deeds executed a deed hereinafter referred to as the Correction Deed. This deed purported to clarify certain "ambiguities" all parties agreed existed in the Richardson/Coates Deeds and the Coates/Dinn Deeds.

On November 18, 1999, George Hamilton executed an oil and gas lease with EOG Resources, Inc. ("EOG") under which EOG agreed to pay Hamilton a 1/4 oil royalty and a 1/4 gas royalty. Under the lease the parties agreed that "[i]n the event [EOG] determines that a bona fide question of title or ownership exists as to any interest covered hereby, [EOG] shall deposit such disputed royalties or revenue therefrom into an escrow account in the depository bank designated herein by the

interest owners whose interest is in dispute.…" Apparently a dispute arose and fifty percent of the amount owed has been deposited into an escrow account with the Laredo National Bank. The remaining fifty percent has been paid to Hamilton.

The underlying litigation commenced when the Dinn–Dinn–Morris Plaintiffs, joined by the Coates Plaintiffs, sued George Hamilton and his successors-in-interest. The issue became whether these plaintiffs collectively own (1) a 1/32 mineral interest entitling them to 1/128 ($1/32 \times 1/4$) of gross production under the EOG lease; (2) a 1/4 mineral interest entitling them to 1/16 ($1/4 \times 1/4$) of gross production under the EOG lease; or (3) a fixed 1/32 nonparticipating royalty interest entitling them to 1/32 of gross production under the EOG lease.

After a one-day bench trial, the court rendered judgment in favor of the plaintiffs finding that the deeds at issue were not ambiguous and the plaintiffs were entitled to their proportionate interest in a 1/4th mineral interest, entitling them to 1/16 ($1/4 \times 1/4$) of gross production under the EOG lease. The court awarded the proportionate shares as follows: (1) to the Dinn–Dinn–Morris Plaintiffs a collective 1/6 mineral interest and (2) to the Coates Plaintiffs a collective 1/12 mineral interest. This appeal by appellants, Hamilton–Encinos and Dream Leader, ensued.

## INTERPRETATION OF THE DEEDS

 This court must determine whether the trial court properly (1) deter-

scribed in the deeds; and (2) Sharon Hamilton (George Hamilton's former wife) and Dream Leader Minerals, Ltd. (collectively "Dream Leader") claim an interest in the land from Hamilton–Encinos.

2. These three deeds will be collectively referred to as the Coates/Dinn Deeds. The appellees/plaintiffs are all successors-in-interest to the original grantees. Coates Energy Trust and Coates Energy Interests, Ltd. (collective-

ly, "the Coates Plaintiffs") are successors-in-interest to George H. Coates. Dinn Mineral Trusts is the successor-in-interest to J.T. Dinn; Georgie Dinn, Florabelle Wheat, the Estate of Mary Beth Gregg, and Carrie Francis Burton are successors-in-interest to Albert Dinn; and Morris Resources, Ltd. is the successor-in-interest to John G. Morris (collectively, "the Dinn–Dinn–Morris Plaintiffs").

mined the deeds were not ambiguous; and (2) construed the Richardson/Coates Deeds as conveying a 1/4 mineral interest, rather than either (a) a 1/32 mineral interest upon termination of the then-existing leases, or (b) a 1/32 nonparticipating royalty interest. As an initial matter, we agree with the trial court that the deeds are not ambiguous, thus, our interpretation of the deeds presents a question of law. *See Luckel v. White,* 819 S.W.2d 459, 461 (Tex. 1991). To construe the deeds, we must ascertain the intent of the parties from all the language contained in the particular deed by the fundamental rule of construction known as the "four corners" rule. *See id.* The actual intent of the parties as expressed in the instrument, in its entirety, prevails over arbitrary rules of construction. *Neel v. Killam Oil Co., Ltd.,* 88 S.W.3d 334, 339 (Tex.App.-San Antonio 2002, pet. denied). We ascertain the parties' intent by harmonizing all parts of the deed, even if different parts of the deed appear contradictory or inconsistent. *Luckel,* 819 S.W.2d at 462; *Neel,* 88 S.W.3d at 339. We assume the parties intended that every clause of a deed have some effect and, in some measure, to evidence their agreement. *Id.*

## A. The Deeds

Both of the Richardson/Coates Deeds conveyed to George H. Coates the following:

> ... 1/4th interest in and to all the oil, gas and other minerals in and under and that may be produced from the following described lands situated in Duval County, Texas, to wit: [description of the land] containing 320 acres more or less. together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals, and removing the same therefrom.

> And said described lands being now under an oil and gas lease ... now held by lessees, it is understood and agreed that this sale is made subject to said lease, but covers and includes 1/4th of all the oil royalty and gas rental or royalty due and to be paid under the terms of said lease.

> It is agreed and understood that 1/32 of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said [Coates], and in the event that the said above described lease for any reason becomes cancelled or forfeited, then and in that event, the lease interests and all future rentals on said land, for oil, gas, and mineral privileges shall be owned jointly by the undersigned [Richardsons] owning 31/32 and [Coates] owning 1/32 interest ... in all oil, gas and other minerals in and upon said land, together with their interest in all future rentals.

Under the Correction Deed, which was executed after the above-referenced leases expired, the Richardsons, Coates, J.T. Dinn, Albert Dinn, and John Morris all agreed as follows:

> WHEREAS, on [June 8, 1926, the Richardsons] conveyed an undivided interest in the minerals under the [described land].

> It being the intention of the parties to convey an undivided one-fourth (1/4th) interest in the minerals, being a one-thirty second (1/32nd) of the gross production for a perpetual term, said interest being participating as to delay rental payable under the outstanding lease and as to delay rentals and cash bonuses payable under future leases; and,

> WHEREAS, the undersigned [Coates], grantee in the above referenced to mineral deeds, on July 14th. A.D.1926, executed mineral deeds ...

respectively to J.T. Dinn, Albert Dinn, and John G. Morris, respectively, conveying to each of said parties an undivided two-ninths (2/9th) of the grantor's undivided interest in the minerals under the above described land; and

WHEREAS, each of the mineral deeds above referenced to is ambiguous as to the interest conveyed and it is the desire of all the parties hereto that each of said deeds be made certain in its terms.

NOW, THEREFORE ... [all the parties above] ... do hereby covenant and agree that the mineral deeds in favor of [Coates] executed by [the Richardsons] are hereby amended such that said mineral deeds cover and include an undivided one-fourth (1/4th) interest in the minerals under the above described property, being one-thirty-second (1/32nd) of the gross production for a perpetual term, which interest, however, shall not be participating as to delay rentals payable under the outstanding lease nor as to delay rentals or cash bonuses payable under the future leases, and for the same consideration the parties hereto ... covenant and agree that each of the above mentioned mineral deeds from [Coates] to J.T. Dinn, Albert Dinn, and John G. Morris, respectively, shall be reformed and amended such as to cover and include an undivided two-ninths (2/9th) interest in the one-fourth (1/4th) undivided interest in the minerals under the above described land owned by said [Coates], being two-two-hundred eighty-eights (2/288th) of the gross production for a perpetual term, provided, however, that said deeds shall be non-participating as to delay rentals payable under the outstanding leases and as to delay rentals and cash bonuses payable under future leases; and it is further covenanted and agreed by the parties

hereto that all mineral deeds above referred to are hereby fully ratified, approved and confirmed, according to the terms and provisions thereof and to the amendments above set out and we hereby declare that the same are and shall remain in full force and effect.

It is further understood and agreed by the parties hereto that the joinder of said [Coates], J.T. Dinn, Albert Dinn, and John G. Morris ... shall not be necessary in future leases, provided, however, that [the Richardsons] ... shall execute no oil, gas and mineral leases on the above described land providing for a royalty of less than one-eight (1/8th) of the oil, gas and other minerals in and under the above described land.

The trial court determined the Richardson/Coates Deeds were not ambiguous as to the amount of the interest conveyed and that the ambiguity referenced in the Correction Deed concerned only whether the interests granted were participating or non-participating as to delay rentals under the existing lease, delay rentals and bonuses under future leases, and executive rights.

## B. Amount Of Mineral Interest

■ Appellants assert Coates's right to receive 1/4 of any royalty payments was specifically limited to the leases then-existing under the Richardson/Coates Deeds. According to appellants, the Richardson/Coates Deeds should be construed as conveying one estate during the life of the existing leases and conveying a second estate upon the termination of those leases. Appellants contend the Richardsons conveyed to Coates a 1/4 interest in royalties to be paid under the existing leases, 1/32 of delay rentals under the existing leases,

and a 1/32 possibility of reverter.[3] However, based on the following language in the Richardson/Coates Deeds, appellants assert that when the condition triggering reverter occurred (*i.e.*, the termination of the leases), the Richardsons owned a 31/32nd mineral interest and Coates owned only a 1/32 mineral interest:

> It is agreed and understood that 1/32 of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said [Coates], and *in the event that the said above described lease for any reason becomes cancelled or forfeited, then and in that event, the lease interests and all future rentals on said land, for oil, gas, and mineral privileges shall be owned jointly by the undersigned [Richardsons] owning 31/32 and [Coates] owning 1/32 interest ... in all oil, gas and other minerals in and upon said land, together with their interest in all future rentals.* [Emphasis added.]

Because the highlighted language is silent as to royalties, appellants argue that the right to receive royalties under future leases is concomitant with the mineral estate conveyed. Thus, according to appellants, when the leases expired, Coates owned a 1/32 mineral interest entitling him to 1/32 of any royalties. The EOG lease reserves a 1/4 royalty, therefore, appellants conclude the plaintiffs should receive 1/32 of that royalty, or 1/128 of gross production.

Appellants also assert the Correction Deed did not change the 1/32 mineral interest granted in the Richardson/Coates Deeds. Appellants contend that, under the Correction Deed, the plaintiffs collectively own a 1/32 mineral interest, including: a 1/32 royalty interest, 0 interest in delay rentals, 0 interest in bonus payments, and no executive rights, except that the Richardsons may not execute a lease providing for less than a 1/8 royalty. Thus, according to appellants, the plaintiffs' collective interest in royalties payable under the EOG lease remains 1/128 of gross production. We disagree.

A comparison of the Richardson/Coates Deeds and the Correction Deed indicates the Richardsons intended to convey to Coates a 1/4 mineral interest. Under the Richardson/Coates Deeds, the Richardsons conveyed to Coates an undivided 1/4 interest "in and under and that may be produced" from the described lands. *See Garza v. Prolithic Energy Co.*, 195 S.W.3d 137, 142 (Tex.App.-San Antonio 2006, pet. denied) ("in and under" refers to a mineral interest). No language in any of the deeds divests Coates of his 1/4 mineral interest. The Correction Deed begins with the statement, "[i]t being the intention of the parties to said deeds to convey an undivided one-fourth (1/4th) interest in the minerals...." The parties then specifically ratified the terms and provisions of the Richardson/Coates Deeds and declared those terms and provisions to remain in "full force and effect." Also, the final provision in the Correction Deed requiring the Richardsons to not lease for less than a 1/8 royalty ensures Coates's interest does not fall below a minimum of 1/32 of gross production. *See Brown v. Havard*, 593 S.W.2d 939, 946 (Tex.1980) (McGee, J., dissenting) ("A prudent grantor who reserves a fraction of royalties may wish to ensure that his interest will not fall below a certain minimum."). If a subsequent lease calls for a 1/8 royalty, Coates's inter-

---

**3.** "[A] lease conveys a fee simple determinable with the possibility of reverter. When the lessor owns all the mineral estate (8/8) and executes an oil and gas lease, the lessor has conveyed all the mineral estate (8/8) but has retained a possibility of reverter in the entire mineral estate (8/8)." *Concord Oil,* 966 S.W.2d at 460.

est in 1/4 of that royalty would continue to be 1/32. However, if a subsequent lease calls for a royalty of more than 1/8, Coates's interest would be 1/4 of that royalty. Interpreting the deeds as fixing Coates's interest at 1/32 would render the final provision meaningless.

Based on our review of the four corners of the conveyances, we conclude the Richardsons did not intend to convey mineral estates differing in magnitude and duration, and instead, they conveyed to Coates a 1/4 mineral interest. *See Concord Oil Co. v. Pennzoil Exploration and Prod. Co.*, 966 S.W.2d 451, 457 (Tex.1998).

## C. Did the Correction Deed Change The Mineral Interest To A Royalty Interest?

Alternatively, appellants contend the parties' intent in executing the Correction Deed was to amend the prior grant of a mineral interest to a grant of a 1/32 non-participating royalty interest.

A severed mineral estate is comprised of five attributes: (1) the right to develop (the right to ingress and egress), (2) the right to lease (the executive right), (3) the right to receive bonus payments, (4) the right to receive delay rentals, and (5) the right to receive royalty payments. *Luckel*, 819 S.W.2d at 463; *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex.1986). "A conveyance of a mineral estate need not dispose of all interests; individual interests can be held back, or reserved, in the grantor." *French v. Chevron U.S.A., Inc.*, 896 S.W.2d 795, 797 (Tex. 1995). Thus, each attribute is a separate, distinct property interest that may be conveyed or reserved in connection with a conveyance of a mineral interest. "However, '[w]hen an undivided mineral interest is conveyed, reserved, or excepted, it is presumed that all attributes remain with the mineral interest unless a contrary in-

tent is expressed.' " *Id.* "The interest conveyed or reserved is to be determined from all the provisions of the instrument." *Temple–Inland Forest Prod. v. Henderson Family P'ship, Ltd.*, 958 S.W.2d 183, 186 (Tex.1997).

A royalty interest is an interest in land that is a part of the total mineral estate. *Luckel*, 819 S.W.2d at 463. Thus, a royalty interest is a property interest that is one of the rights and attributes comprising the mineral estate. *Id.* "A royalty interest derives from the grantor's mineral interest and is a nonpossessory interest in minerals that may be separately alienated." *Id.* "The same instrument may convey an undivided portion of the mineral estate and a separate royalty interest, and the royalty interest conveyed may be larger or smaller than the interest conveyed in the minerals in place." *Id.* A non-participating royalty interest "is non-possessory in that it does not entitle its owner to produce the minerals himself. It merely entitles its owner to a share of the production proceeds, free of the expenses of exploration and production." *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 789 (Tex.1995). It is "an interest in the gross production of oil, gas, and other minerals carved out of the mineral fee estate as a free royalty, which does not carry with it the right to participate in the execution of, the bonus payable for, or the delay rentals to accrue under, oil, gas, and mineral leases executed by the owner of the mineral fee estate." *Id.* at 789–90 (citation omitted).

Under the Richardson/Coates Deeds, the Richardsons conveyed to Coates certain attributes of a mineral estate. The Richardsons conveyed to Coates "the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals, and removing the same therefrom...."

Under the Richardson/Coates Deeds, Coates was entitled to receive delay rentals under the existing leases and under any future leases. No mention of the executive right is made. The parties agree no cash bonuses were paid under the existing leases; therefore, this attribute did not exist to be conveyed or reserved.

The Correction Deed does not specifically state which provision of the Richardson/Coates Deeds was considered ambiguous, except to state the mineral deeds are "ambiguous as to the interest conveyed." However, the Correction Deed reiterates that a 1/4 mineral estate was conveyed to Coates, his share of any lease royalties equaled 1/32 of gross production, and his mineral interest included the right to participate in rentals under the existing lease and rentals and cash bonuses under any future leases:

> It being the intention of the parties to convey an undivided one-fourth (1/4th) interest in the minerals, being a one-thirty second (1/32nd) of the gross production for a perpetual term, said interest being participating as to delay rental payable under the outstanding lease and as to delay rentals and cash bonuses payable under future leases. . . .

The Correction Deed then again reaffirms the Richardsons' intent to convey a possessory, mineral interest to Coates, and that his share of royalties under existing leases would equal 1/32 of gross production:

> NOW, THEREFORE ... [all the parties above] ... do hereby covenant and agree that the mineral deeds in favor of [Coates] executed by [the Richardsons] are hereby amended such that said mineral deeds cover and include an undivided one-fourth (1/4th) interest in the minerals under the above described property, being one-thirty-second (1/32nd) of the gross production for a perpetual term, which interest, however, shall not be participating as to delay rentals payable under the outstanding lease nor as to delay rentals or cash bonuses payable under the future leases. . . .

However, whereas Coates participated in other attributes of a mineral estate under the Richardson/Coates Deeds, the above language amends that conveyance to strip him of the right to participate in delay rentals payable under the outstanding lease and delay rentals or cash bonuses payable under future leases.

■■■ Appellants argue that stripping Coates of these rights resulted in a conversion of the mineral interest granted to Coates in the Richardson/Coates Deeds to a nonparticipating royalty interest. We disagree. A mineral interest shorn of certain attributes nevertheless remains a mineral interest. *See Altman*, 712 S.W.2d at 118–19 (holding that "a mineral interest shorn of the executive right and the right to receive delay rentals remains an interest in the mineral fee."). If the Richardsons had meant to convey only a royalty interest, they need not have reserved to themselves the right to receive delay rentals and cash bonuses because "[a] grant of a royalty interest, without any further grant, does not convey an interest to the grantee in delay or other rentals, or in bonus payments, nor would it convey executive rights." *French*, 896 S.W.2d at 798. Thus, reserving to the Richardsons the right to rentals and cash bonuses would have been redundant because a royalty interest is a non-possessory interest that does not include the right to receive rentals or bonuses. Accordingly, we hold that the Richardsons conveyed to Coates a mineral interest and this interest did not convert to a fixed royalty interest under the Correction Deed.

## EVIDENTIARY RULINGS

Hamilton–Encinos complains the trial court erred in excluding from evidence the following three documents entered into subsequent to the Richardson/Coates Deeds and the Correction Deed: (1) a Pooling Agreement (defendants' exhibit 2), (2) a Division Order (defendants' exhibit 4), and (3) the 1934 Instrument (defendants' exhibit 7). Hamilton–Encinos argues the trial court should have considered these documents when it construed the intent and meaning of the Richardson/Coates Deeds and the Correction Deed.

We first note the trial court admitted exhibits 2 and 7, and excluded only exhibit 4. Therefore, nothing in the record supports Hamilton–Encinos's contention that the trial court did not take exhibits 2 and 7 into consideration when it construed the deeds. Also, because we have previously determined the deeds are not ambiguous, the trial court would not have erred if it had refused to consider exhibits 2 and 7.

As to exhibit 4, one of the objections raised to the admission of this exhibit was that it was not disclosed pursuant to the trial court's Rule 166 pretrial order. Inherent in a court's ability to issue orders is a court's authority to enforce those orders. *See* TEX.R. CIV. P. 166. The exclusion of an exhibit not listed in a pretrial order is not an impermissible sanction. *British American Ins. Co. v. Howarton*, 877 S.W.2d 347, 351 (Tex.App.-Houston [1st Dist.] 1994, writ dism'd by agr.). Therefore, the trial court did not err in excluding exhibit 4.

## QUASI–ESTOPPEL

Hamilton–Encinos also relies on exhibits 2, 4 and 7 to argue the plaintiffs should be estopped from taking the position that they are entitled to a 1/4 mineral interest. According to Hamilton–Encinos, these exhibits demonstrate the plaintiffs own a 1/32 fixed non-participating royalty interest.

Quasi-estoppel is an equitable doctrine that operates as an affirmative defense. *See Cook Composites, Inc. v. Westlake Styrene Corp.*, 15 S.W.3d 124, 136 (Tex.App.-Houston [14th Dist.] 2000, pet. dism'd). "Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex.2000). "The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Id.*

In the exercise of equitable jurisdiction, trial courts necessarily are vested with discretionary power, which appellate courts are not authorized to disturb, except in cases where an abuse of discretion is clearly shown. *Burnett v. Surratt*, 67 S.W.2d 1041, 1042 (Tex.Civ.App.-Dallas 1934, writ ref'd). Whether to utilize equitable estoppel is within a court's discretion. *See In re Merrill Lynch Trust Co. FSB*, 123 S.W.3d 549, 555 (Tex.App.-San Antonio 2003, orig. proceeding). Although admitted into evidence, we note that exhibit 2, the Pooling Agreement, is not signed by all the parties. Exhibit 7, the 1934 Instrument, states the purpose of the Correction Deed was to "make the [Richardson/Coates Deeds a] non-participating one-thirty second (1/32) royalty deed...." However, although exhibit 7 is signed by the parties, a signature alone does not evidence that the signing parties retained any benefit under the agreement. On this record, there is no evidence Coates or any of his successors-in-interest received any benefits under either the Pooling Agree-

ment or the 1934 Instrument. Therefore, we cannot say the trial court abused its discretion in refusing to preclude the plaintiffs from claiming a 1/4 mineral interest based on the equitable doctrine of quasi-estoppel.

## STATUTE OF LIMITATIONS

■ Finally, Hamilton–Encinos contends the statute of limitations bars the plaintiffs' claims because the Pooling Agreement and the Division Order put the plaintiffs on notice that appellants were repudiating Coates's claim to any interest in excess of 1/32 of gross production.

■ Generally, a statute of limitations begins to run when notice of the adverse claim is made apparent to the owner. *Pierson v. GFH Fin. Servs. Corp.*, 829 S.W.2d 311, 314 (Tex.App.-Austin 1992, no writ); *Gaynier v. Ginsberg,* 715 S.W.2d 749, 755 (Tex.App.-Dallas 1986, writ ref'd n.r.e.). The statute does not begin to run as long as the relationship of the parties continues or, if the contractual relation was repudiated, until notice of the repudiation is conveyed to the owner, either di-

rectly or by adverse acts or claims of ownership so notorious that the owner may be presumed to have known of the repudiation. *Pierson,* 829 S.W.2d at 314. As noted above, the Division Order was properly not admitted into evidence and the Pooling Agreement is not signed by all the parties. Considering the only fully executed document admitted into evidence, the 1934 Instrument, we conclude this document is not so notorious a claim of ownership such that Coates should be presumed to have known of any adverse claim. Therefore, Hamilton–Encinos did not establish that the plaintiffs' claims are barred by limitations.

## CONCLUSION

We overrule appellants' issues and affirm the trial court's judgment.