

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-09-225-CV

MERLE HUDSPETH, VIRGINIA                                      APPELLANTS
LYNCH, CAROLYN WOOD,
MARGARET O'BRIEN, DALE
HUDSPETH, AND PAULA SIMS

V.

MICHAEL J. BERRY, HENRY R.                                    APPELLEES
BERRY, CRISSA ELAINE BERRY,
AND HAYDEN REECE BERRY

------------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In one issue, Appellants Merle Hudspeth, Virginia Lynch, Carolyn Wood,

Margaret O'Brien, Dale Hudspeth, and Paula Sims (collectively "the Hudspeths")

appeal from the trial court's orders granting summary judgment in favor of Appellees

---

[1] See Tex. R. App. P. 47.4.

Michael J. Berry, Henry R. Berry, Crissa Elaine Berry, and Hayden Reece Berry (collectively "the Berrys").  We reverse and render.

## II.  Factual and Procedural History

In 1943, two brothers, J.H. Berry and R.C. Berry, conveyed by warranty deed ("the 1943 deed") their interests in jointly owned land to a third brother, W.L. Berry.  The 1943 deed contains a reservation clause[2] reserving nonparticipating royalty interests[3] for both J.H. and R.C., or their successors-in-interest.  The Hudspeths are successors-in-interest to W.L., and the Berrys are successors-in-interest to J.H. and R.C.[4]

In October 2005, the Hudspeths (via Merle) executed an oil and gas lease with H.E.P. Oil Company, Ltd. ("H.E.P.") that pays a leasehold royalty rate of 1/5th of production.  After the well began producing, a dispute arose between the Hudspeths and the Berrys as to the interpretation of the 1943 deed's reservation clause.  When an agreement could not be reached between the parties, the Hudspeths filed a declaratory judgment action.  Subsequently, the Berrys—Michael filing with Henry

---

[2]... The interpretation of this reservation clause is the subject of this appeal. We reproduce the pertinent portions of the clause in our analysis below.

[3]... A nonparticipating royalty interest is nonpossessory in that it does not entitle its owner to produce the minerals himself.  It merely entitles its owner to a share of the production proceeds, free of the expenses of exploration and production.  See Plainsman Trading Co. v. Crews, 898 S.W.2d 786, 789 (Tex. 1995); Luckel v. White, 819 S.W.2d 459, 463 (Tex. 1991); Hamilton v. Morris Res., Ltd., 225 S.W.3d 336, 344 (Tex. App.–San Antonio 2007, pet. denied).

[4]... Crissa and Hayden are successors-in-interest to J.H.; Michael and Henry are successors-in-interest to R.C.

and Crissa filing with Hayden—filed motions for summary judgment, arguing, in essence, that the 1943 deed reserved a "fraction of royalty" interest[5] for both J.H. and R.C., or their successors-in-interest. The Hudspeths responded with their own motions for summary judgment, requesting that the Berrys' motions be denied and that the trial court grant judgment in their favor. The Hudspeths asserted, in essence, that the 1943 deed reserved a "fractional royalty" interest[6] for both J.H. and R.C., or their successors-in-interest.

The trial court, agreeing with the Berrys, entered orders granting their motions for summary judgment and ruling that the 1943 deed entitled J.H. or his successors-in-interest to a 1/5th "fraction of royalty" interest and R.C. or his successors-in-interest to a 1/5th "fraction of royalty" interest; thus, the Berrys were entitled to two 1/25th royalty interests under the H.E.P. lease. This appeal followed.

### III. Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ.

---

[5] A "fraction of royalty" interest conveys a fractional share of the royalty that is contained in an oil and gas lease—it is not fixed, but rather "floats" in accordance with the leasehold royalty rate. *Range Res. Corp. v. Bradshaw*, 266 S.W.3d 490, 493 (Tex. App.—Fort Worth 2008, pet. denied).

[6] A "fractional royalty" interest entitles the owner to the specified fractional amount stated in the deed and remains constant regardless of the amount of royalty contained in a subsequently-negotiated oil and gas lease. *Bradshaw*, 266 S.W.3d at 493.

P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).  We review a summary judgment de novo.  *Mann Frankfort*, 289 S.W.3d at 848.  We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.  *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002).

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented.  *Mann Frankfort*, 289 S.W.3d at 848.  The reviewing court should render the judgment that the trial court should have rendered.  *Id*.

## IV.  Royalty Interest

The sole issue in this appeal is one of deed interpretation:  whether the reservation clause in the 1943 deed entitles the Berrys to two "fractional royalty" interests or to two "fraction of royalty" interests.

## A.  Rules of Deed Interpretation

When a deed is unambiguous, as is the deed in this case, its construction is a question of law for this court.  *Luckel*, 819 S.W.2d at 461.  Our primary duty is to ascertain the intent of the parties from all the language in the deed by a fundamental

4

rule of construction known as the "four corners" rule. *Id.* at 461. The actual intent of the parties as expressed in the instrument as a whole prevails over arbitrary rules. *Id.* at 462. To ascertain the parties' intent, we must harmonize all parts of the deed, even if different parts of the deed appear contradictory or inconsistent. *Id.* We assume that the parties intended that every clause of a deed have some effect and, in some measure, to evidence their agreement. *Id.*

## B. The Reservation Clause

The pertinent portions of the reservation clause read as follows:

> There is, however, expressly reserved and excepted from this conveyance, for the benefit of J. H. Berry, his heirs or assigns, and [sic] undivided 1/40th royalty interest (being 1/5th of 1/8th) and for the benefit of R. C. Berry, his heirs or assigns, an undivided 1/40th royalty interest (being 1/5th of 1/8th) . . . . But the grantee herein, his heirs or assigns, may, and they are hereby expressly authorized to lease the said land at will for oil, gas and other mineral privileges without our consent or ratification but in any such lease or leases, there shall be reserved the usual 1/8th royalty of which 1/8th J. H. Berry shall be entitled to and receive 1/5th, and R. C. Berry shall be entitled to and receive 1/5th.

## C. Discussion

In their motions for summary judgment, the Berrys argued that the 1943 deed reserved a "fraction of royalty" interest for both J.H. and R.C., or their successors-in-interest, such that their shares of the royalty would always be 1/5th of the leasehold royalty rate. Consequently, under the lease executed with H.E.P., the Berrys would be entitled to two 1/25th royalty interests (1/5th reservation rate x 1/5th leasehold royalty rate). The Hudspeths, on the other hand, asserted that the 1943 deed

reserved a "fractional royalty" interest for both J.H. and R.C., or their successors-in-interest, such that their shares of the royalty would always be a fixed 1/40th royalty interest. Consequently, under the lease executed with H.E.P., the Berrys would be entitled to two 1/40th royalty interests.

The Berrys' argument that they are entitled to 1/5th of any leasehold royalty rests upon a claim that the language, "the usual 1/8th," in the 1943 deed means "something very different from its plain language." Specifically, the Berrys assert that "[a]t the time that the 1943 deed was executed, '1/8th' was commonly intended as a synonym for 'landowner's share.'" Thus, the parties' intent at the time that the 1943 deed was conveyed was to reserve 1/5th of "any leasehold royalty," not a fixed 1/5th of 1/8th royalty interest (a 1/40th royalty interest). In support of their argument, the Berrys cite to *Luckel* and *Concord Oil*, two supreme court cases, in which the court construed deeds that contained one or more differing fractions. *Concord Oil Co. v. Pennzoil Exploration & Prod. Co.*, 966 S.W.2d 451, 454 (Tex. 1998); *Luckel*, 819 S.W.2d at 459.

In *Luckel*, the granting and warranty clauses of the royalty deed at issue spoke of a 1/32nd royalty. 819 S.W.2d at 461. A clause addressing an existing lease and another clause dealing with subsequent leases stated, respectively, that the grantee "shall receive one-fourth" and "shall be entitled to one-fourth" of all royalties, which would equal a 1/32nd royalty under a 1/8th royalty lease. *Id.* Problems in construing the deed arose when leases providing for a 1/6th royalty were subsequently

6

obtained. *Id.* The supreme court held that 1/4th of whatever royalty was obtained, rather than a fixed 1/32nd royalty interest for every lease, was conveyed. *Id.* at 464. The court held that the grant of a 1/32nd royalty, however, was a floor for the royalty interest. *Id.* at 464–65. In other words, the 1/4th of whatever royalty was otherwise payable under any given lease could not result in less than a 1/32nd royalty. *Id.*

As in *Luckel*, the supreme court in *Concord Oil* construed a deed under which provisions other than the granting clause gave rights to the grantee that, considered in the aggregate, amounted to a larger fraction of the mineral or royalty interest specified in the granting clause. *See Concord Oil*, 966 S.W.2d at 455. The opening paragraph of the deed described a 1/96th interest in the "estate" conveyed. *Id.* at 457. The second paragraph recited that "the estate hereby conveyed . . . covers and includes one-twelfth (1/12) of all rentals and royalty of every kind and character." *Id.* The supreme court concluded that the parties' intent was to convey a single estate that included 1/12th of rents and royalties. *Id.* at 459. The court reasoned that "if the estate were only a 1/96[th] interest in the minerals, it would cover and include only 1/96[th] of the rents and royalty. A 1/96[th] mineral interest could not 'cover [] and include[] one-twelfth (1/12) of all rentals and royalties.'" *Id.*

We note that the plain language of the deeds in *Luckel* and *Concord Oil* contained conflicting fractions—that is, in *Luckel,* the first part of the deed referred to a 1/32nd interest while a later portion of the deed referred to a 1/4th interest, and in *Concord Oil*, the first part of the deed referred to a 1/96th interest while a later

7

portion of the deed referred to a 1/12th interest. *Id.* at 454; *Luckel*, 819 S.W.2d at 459. The plain language of the 1943 deed, on the other hand, does not contain conflicting fractions.

The first part of the reservation clause in the 1943 deed expressly reserves an "undivided 1/40th royalty interest (being 1/5th of 1/8th)" for J.H. and for R.C. or for their successors-in-interest. The clause goes on to provide that "there shall be reserved the usual 1/8th royalty of which 1/8th J. H. Berry shall be entitled to and receive 1/5th, and R.C. Berry shall be entitled to and receive 1/5th." Based on the plain language—that is, "of which 1/8th . . . shall be entitled to receive 1/5th"—J.H. and R.C. were each entitled to receive 1/40th royalty interests (1/5th x 1/8th). Both portions of the 1943 deed's reservation clause refer to 1/40th royalty interests. Thus, there is nothing in the 1943 deed to harmonize.

The Berrys, relying on *Luckel* and *Concord Oil*, argue that the "usual 1/8th" language in the 1943 deed should *not* be construed based on the plain language doctrine. *Luckel* and *Concord Oil*, however, do not stand for the proposition that "1/8th" means something other than 1/8th. Instead, these cases stand for the proposition that when a deed contains conflicting fractions, the court must construe the deed to harmonize all parts of the deed and to give effect to the parties' intent. *See Concord Oil*, 966 S.W.2d at 454*; Luckel*, 819 S.W.2d at 462. Because the 1943 deed does not contain conflicting fractions, and because the plain language of the deed is unambiguous, we hold that the reservation clause in the 1943 deed provides

8

for a "fractional royalty" interest rather than a "fraction of royalty" interest. *See Rutherford v. Randal*, 593 S.W.2d 949, 953 (Tex. 1980) ("The absence of an ambiguity in the deed negates all justification for the consideration of extrinsic evidence concerning the original intent of the grantor . . . . Under these circumstances, this court will limit its search for the grantor's intent to that intent which was expressed within the four corners of the deed."). Thus, we agree with the Hudspeths' interpretation that the language of the 1943 deed entitles the Berrys to two fixed 1/40th royalty interests. Accordingly, we sustain the Hudspeths' sole issue.

## V. Conclusion

Having sustained the Hudspeths' sole issue, we reverse the trial court's orders and render judgment that the 1943 deed reserves two fixed 1/40th royalty interests, resulting in (1) J.H.'s successors-in-interest being entitled to 1/40th of the royalty

9

proceeds under the existing oil and gas lease with H.E.P. and under any subsequently-negotiated oil and gas lease, and (2) R.C.'s successors-in-interest being entitled to 1/40th of the royalty proceeds under the existing oil and gas lease with H.E.P. and under any subsequently-negotiated oil and gas lease.


BOB MCCOY
JUSTICE

PANEL: MCCOY and MEIER, JJ.; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment).

DELIVERED: July 15, 2010

10