**J. E. GRISSOM et al., Appellants,**

**v.**

**Chris D. GUETERSLOH et al., Appellees.**

**No. 7463.**

Court of Civil Appeals of Texas.

Amarillo.

May 10, 1965.

Rehearing Denied June 7, 1965.

Wagstaff, Alvis, Pope, Doscher & Charlton, Abilene, for appellants.

Kiser & Hook, Phelan & Pheian, Levelland, Hugh Anderson and Robert Howard, Lubbock, Shank, Irwin & Chester, Dallas, for appellees.

DENTON, Chief Justice.

This suit was brought by Chris D. Guetersloh and others against J. E. Grissom and others to settle a dispute between the parties as to the interpretation to be given a warranty deed from Hardy and J. E. Grissom conveying 614.4 acres of land to Chris D., W. C. and M. F. Guetersloh.

The deed executed in January of 1934 contained the following clause which constitutes the basis for this controversy:

"and also reserving and excepting from this conveyance an undivided one-sixteenth 1-16th of all the oil, gas and other minerals in and under the tract of land hereby conveyed; But the grantors waive all interest in and to all rentals or other consideration which may be paid to grantees for any oil and gas lease on the land or any part thereof hereby conveyed."

The original grantors and grantees or their heirs and the Placid Oil Company, the owner of an oil and gas lease on 147.2 acres of the tract executed by the Gueterslohs, are parties to this suit. The Atlantic Refining Company is holding royalties of approximately $2,000.00 from a lease executed subsequent to the date of the above deed and prior to the Placid Oil lease but which has expired. This company is not a party to this suit but has expressed a desire to pay the proceeds to the proper parties upon the termination of this suit.

The primary question in issue is the meaning and interpretation of the reservation quoted above. The grantees, plaintiffs below, contend the clause in question was a reservation of an undivided 1/16th of the mineral interest and that the grantors are entitled to receive 1/16th of the 1/8th royalty payable under the terms of any oil and gas leases executed by the grantees. The appellants contend it was a reservation of 1/16th of all oil, gas and other minerals produced as a royalty interest and are entitled to receive 1/2 of the 1/8th royalty payable under the terms of any oil and gas lease subsequently executed. The trial court, without a jury, rendered judgment in favor of the appellees and found appellants had retained an undivided 1/16th of all the oil, gas and other minerals in and under the described land; that the Placid Oil lease dated April 14, 1960, was a valid and subsisting lease; that the Gueterslohs, grantees herein, have the executive right to execute oil and gas leases; that the Grissoms, grantors, were entitled to receive only 1/16th of the royalties provided for in the Placid Oil lease or in any future leases; and awarded the Grissoms 1/16th of the royalties being held by the Atlantic Refining Company.

■ Neither party contends the reservation clause is ambiguous, nor is there an allegation there was fraud or mutual mistake in connection with the execution of the deed in question. An instrument not alleged to be ambiguous must be construed so as to carry out the intentions of the parties. Brown v. Brown (Tex.Civ.App.), 245 S.W.2d 995 (Writ Refused); Ervay, Inc. v. Wood (Tex.Civ.App.), 373 S.W.2d 380 (Refused, NRE); 13 Tex.Jur.2d, Section 122, pages 287–288.

Appellants rely primarily on Watkins v. Slaughter, 144 Tex. 179, 189 S.W.2d 699; Klein v. Humble Oil & Refining Co., 126 Tex. 450, 86 S.W.2d 1077; and Miller v. Speed (Tex.Civ.App.), 259 S.W.2d 235; for their contention the deed reserved to the grantors 1/16th of total production as a royalty. In the Watkins case the reservation clause read as follows:

" 'Together with a 15/16 interest in and to all the oil, gas and other minerals in and under and that may be produced from said land and the grantor retains title to a 1/16 interest in and to all of the oil, gas and other minerals in and under and that may be produced from said land; but it is distinctly agreed and understood that the grantor, his heirs and assigns shall not receive any part of the money rental paid on any future lease; and the grantee, his heirs or assigns, shall have authority to lease said land and receive the cash bonus and rental; and the grantor, his heirs or assigns, shall receive the royalty retained herein only from actual production of oil, gas or other minerals on said land.'

The holding that the deed reserved a royalty interest was based primarily on the words, "that may be produced" and the grantor "shall receive the royalty retained herein only from actual production of oil, gas, or other minerals on said land." The court took particular note of the words, "actual production", and "royalty" to determine the clear intent of the parties and construed the reservation to be one of royalty interest rather than a mineral interest. No such language is found in the reservation clause in the case at bar.

The material part of the reservation in Miller v. Speed read:

" 'Out of the above described tract of land there is hereby expressly reserved to the vendor herein, its successors and assigns an undivided 1/24th of all the oil, gas and other minerals produced, saved and made available for market therefrom for a period of 15 years from the date hereof;' "

" 'and in the execution of any mineral leases it shall not be necessary for the grantor herein to be joined therein, nor shall the grantor herein be entitled to participate in or receive any of the bonuses or delay rentals provided for in such leases.' "

The finding that the reservation was a royalty interest rather than a mineral interest was based on the phrase "minerals produced, saved and made available for market." The court quoted with approval from the Watkins case when it held: "The owner of the 1/16 is to be paid only from production." In the instant case the interest reserved was an "undivided 1/16th of all the oil, gas and other minerals *in and under the tract of land hereby conveyed*." (Emphasis added.) No reference is made to oil or gas "produced, saved and made available for market." The language here refers to the minerals in place. We consider this a very material distinction.

Appellants also strongly rely on Klein v. Humble Oil & Refining Co., supra. The reservation of the deed in that case was as follows:

" 'Grantors, herein, however, reserve for themselves, their heirs and assigns, one-eighth (1/8) of all mineral rights in and under Ten (10) acres of land, running north and south, on the east end of the 60 acres herein conveyed, and it is understood and agreed that if no production of oil is had on said Ten (10) acres within a period of Twenty (20) years, this reservation shall terminate and become null and void, and

it is further understood that grantors herein are not to participate in any oil lease or rental bonuses that may be paid on any lease on said above described land, and hereby waive any rights they may have or be entitled to in any future oil or gas lease.' "

The reservation clause in the Klein case is quite similar to the one in the instant case. However, there was another instrument involved which the court considered in interpreting the intention of the parties. Although the court held the deed reserved a royalty interest in the 10 acres, it did so only after the intention of the parties was so expressed by a subsequent instrument duly acknowledged and filed of record by the grantor. In that instrument the grantor expressly stated: "[M]y interest is entirely a royalty interest and it is plainly recited in the deed from myself t F. F. Klein * * * I waive all of my rights in any oil or gas lease and shall only retain a royalty." In giving credence to this instrument the court said: "This instrument expresses the interpretation which Stein and Baker placed upon the language of the Stein reservation, and, to our minds, makes clear the real intent of the parties." This record contains no other instruments to express the intent of the parties. We have only the deed itself to look to. We therefore conclude the Klein case does not support appellants' position.

We must therefore analyze the reservation clause in light of other authorities. The reservation here is made up of two parts. The first part is "and also reserving and excepting from this conveyance an undivided one-sixteenth 1-16th of all the oil, gas and other minerals in and under the tract of land hereby conveyed;". This portion of the reservation, taken alone, unquestionably reserves to the grantors an undivided 1/16th interest in the minerals in and under the described land. Had the above-quoted portion of the reservation constituted the whole reservation, the interest reserved would have clearly been a mineral

fee interest. Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004. In that case the reservation read as follows:

"'Grantors expressly reserve unto themselves for a period of fifteen years from the date hereof an undivided one-sixteenth interest and estate in and to all of the minerals of every character, including oil and gas, in and under and appurtenant to all of the above described property, and said undivided interest in said minerals is not intended in any wise to be conveyed hereby, but the same is hereby excepted from this conveyance; provided, however, that in the event both of the grantors herein should depart this life prior to the expiration of said fifteen years from date hereof, then this reservation shall be null and void and of no further force and effect, and the full title to said undivided interest shall then vest in said John E. Murphy, his heirs and assigns.'"

This reservation is almost identical in a legal sense to the first part of the reservation made by appellants. The court, speaking through Chief Justice Alexander, held:

"The reservation contained in the deed appears on its face to be plain and unambiguous. In clear language it reserves an undivided 1/16 interest in the minerals in and under said land, and makes no reference whatever to any royalty to be paid under any existing or subsequent lease."

The second part of the reservation clause under consideration reads:

"But the grantors waive all interest in and to all rentals or other consideration which may be paid to grantees for any oil and gas lease on the land or any part thereof hereby conveyed."

By brief appellants seem to concede the first part of the reservation reserved a mineral interest, but contend that the second clause stripped the mineral interest of all incidents of such an interest, thereby converting the reservation into a royalty interest. In other words, appellants contend a reservation of a fraction of the minerals without the exclusive right to lease nor to receive bonuses or delay rentals constitutes a perpetual nonparticipating royalty. We are unable to agree with this contention. An owner of a mineral interest may waive his right to execute oil and gas leases. In discussing the reservation clause in Klein v. Humble, supra, Judge Hickman said:

"In the reservation contained in the deed from Stein and wife to Klein, above copied, appears this provision: '* * * And it is further understood that grantors herein are not to participate in any oil lease or rental bonuses that may be paid on any lease on said above described land and hereby waive any rights they may have or be entitled to in any future oil or gas lease.' We must ascribe some meaning to this language. At least, it discloses that the parties contemplated that a mineral lease would be executed. The only persons with authority to execute the lease would be the owners of the minerals, and the Steins waived their right to participate in it. Impliedly, if not expressly, that waiver was in favor of the vendee, Klein, and his assigns. Without resort to other instruments interpreting this language, we incline to the view that it should be construed as empowering Klein and his assigns to subject Stein's interest to a mineral lease * * *."

The question is whether the second part of the reservation clause has the effect of reserving to the grantor a royalty interest. In our opinion it does not. It makes no reference whatever to a royalty to be paid under a subsequent lease (It was stipulated that no oil and gas lease was in force and effect at the time of the execution of the deed). Neither does the reservation make reference to an interest in the minerals

"from actual production"; or to an interest in minerals "produced, saved and made available for market"; or other similar phrases which have been held to show an intention of the parties to reserve a royalty interest as opposed to a mineral interest. The second clause of the reservation simply waived the grantor's interest in "rentals or other consideration which may be paid to grantees for any oil and gas lease on the land or any part thereof hereby conveyed." In our opinion the waiving of these bonuses and delay rentals by a grantor in a mineral reservation does not constitute a reservation of a royalty interest. This reservation does indicate the parties contemplated that a mineral lease would be executed. Only owners of mineral interests have authority to execute such leases. Under the holding of Klein v. Humble Oil & Refining Co., supra, we are of the opinion appellants waived that right in favor of the grantees, the Gueterslohs. Subsequent leases executed by the Gueterslohs or their assigns would subject the appellants' mineral interests to the mineral lease. By brief, appellants concede the reservation gave the grantees the exclusive right to execute oil and gas leases. Under the language of the reservation, we agree that was the intention of the parties. We therefore conclude the trial court was correct in holding appellants had retained an undivided 1/16th mineral fee interest in the oil, gas and other minerals in place; in awarding appellants 1/16th of 1/8th royalty held in suspense by Atlantic Refining Company under the expired lease; and that the grantees have the executive right to execute oil and gas leases on the premises.

Appellants' last point of error contends the oil and gas lease from appellees and subsequently assigned to Placid Oil Company dated April 14, 1960, was invalid in so far as it granted lessees the right to pool or unitize the lease with other mineral estates. This Placid lease expired by its own terms April 14, 1965, which was subsequent to the trial of the case and the submission of the case in this Court. We therefore consider the question raised in appellants' last point to be moot, and we do not deem it necessary to discuss or pass upon it.

The judgment of the trial court is affirmed.