**DIAMOND SHAMROCK CORPORATION,**
Appellant,

v.

**S.E. CONE, Jr., Appellee.**

No. 07–82–0246–CV.

Court of Appeals of Texas, Amarillo.

May 23, 1984.

Rehearing Denied June 14, 1984.

Karl R. Albert, and Roger T. Neely, Bishop, Payne, Lamsens & Brown, Fort Worth, for appellant.

Jack McClendon, McClendon & Richards, Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

S.E. Cone, Jr. brought the action underlying this appeal to establish his title to and possession of a 40-acre mineral estate which Diamond Shamrock Corporation had leased from Dr. Lester A. Anderson, and to recover damages, together with related monetary amounts, from Diamond Shamrock for its production of oil from the mineral estate by a well located on adjacent property under a permit including the mineral estate in question. The trial court rendered a partial summary judgment awarding Cone title to and possession of the mineral estate and decreeing his right to lease the property. After the remaining issues were severed, Diamond Shamrock perfected its appeal from the summary judgment.

This appeal requires us to determine, under Diamond Shamrock's two points of error, whether the reservation creating the 40-acre mineral estate is ambiguous, thereby precluding the summary judgment rendered, and, if the reservation is unambiguous, whether the reservation includes the right to execute leases of the interest.

Concluding that the reservation unambiguously reserved a mineral estate with the right to execute leases of it, we overrule Diamond Shamrock's points of error and affirm.

The summary judgment record establishes that R.L. Hooten and wife, Emma Hooten, the owners of the southeast quarter (SE/4) of Survey Seventeen (17), Block D–2 in Lubbock County, Texas, conveyed the property to Pearl Elizabeth Anderson on 1 January 1941 by a warranty deed containing a reservation in this language:

> There is reserved however to the grantors herein, their heirs and assigns all oil, gas and other minerals in, under and that may be produced from forty (40) acres in a square in the Northeast corner of the land herein conveyed. However, grantors herein shall receive no part of any lease or bonus money from any oil and gas or mineral lease on said land, or from any delay rental paid to keep said lease in force. The grantors herein shall receive money from such lease only in case of actual production of oil, gas or other minerals from said 40 acres above described. This reservation is made subject to any outstanding oil, gas and mineral lease now on said land, if any.

The Hootens' deed of conveyance with the reservation severed the estate in the realty from the estate in the oil, gas and other minerals, which is referred to as the 40-acre mineral estate, each of which is separate and distinct. *Grissom v. Anderson*, 125 Tex. 26, 79 S.W.2d 619, 621 (1935).

The reserved 40-acre mineral estate was acquired, through mesne conveyances, by Cone under a 30 May 1979 mineral deed. Previously, upon the death of Pearl Elizabeth Anderson in 1976, her interest in the quarter section passed to Dr. Lester A. Anderson and, on 25 August 1977, he leased all of the quarter section to Diamond Shamrock for oil and gas exploration and development.[*]

---

[*] In support of his severed claim for monetary damages, Cone alleged that under the Anderson lease and a permit granted by the Railroad Commission of Texas upon Diamond Shamrock's application embracing the 40 acres in the northeast corner of the quarter section, Diamond Shamrock began drilling an oil well on adjacent acreage in February of 1981, and sub-

In presenting its contention that the reservation is ambiguous, Diamond Shamrock submits that when the language is subjected to applicable rules of interpretation, it remains susceptible to more than one reasonable construction, *i.e.*, it is a reservation of either a mineral interest or a royalty interest, either of which may be an executive or a nonexecutive interest. To explain the ambiguity and ascertain the true intention of the parties to the writing, Diamond Shamrock says, parol evidence must be taken and, therefore, the summary judgment was improper.

■ Whether the reservation is ambiguous is a question of law to be answered by the court upon subjecting the language to the applicable rules of interpretation. Then, if the reservation may be given a certain legal meaning, it is unambiguous and its meaning properly may be decreed by summary judgment; but, if it remains reasonably susceptible to more than one legal meaning and resort to extraneous evidence is necessary to determine its true meaning, it is ambiguous and summary judgment is improper. *R & P Enterprises v. LaGuarta, Gavrel & Kirk*, 596 S.W.2d 517, 518–19 (Tex.1980).

■ The primary concern of the court is to ascertain the true intention of the parties. *Myers v. Gulf Coast Minerals Management Corp.*, 361 S.W.2d 193, 196 (Tex.1962). There being no allegation of fraud, accident or mistake, and no attempt by any party to reform the reservation, the court will give effect to the intention the parties expressed by the terms of the reservation. *Woods v. Sims*, 154 Tex. 59, 273 S.W.2d 617, 620 (1954). In this regard, it generally is considered that parties intend every clause to have effect in evidencing their agreement, and their expression should not be thwarted except in the instance of a plain and necessary repugnance. Thus, even if different parts of the reservation appear to be contradictory, the court will, when possible, harmonize the parts, *id.* 273 S.W.2d at 620–21, so that none of the provisions will be rendered

meaningless. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, supra,* at 519. Then, under the authorities on the interpretative rules, if the reservation is so worded that it clearly discloses the intention of the parties or is not fairly susceptible of more than one legal meaning, the reservation is not ambiguous. *Lewis v. East Texas Finance Company*, 136 Tex. 149, 146 S.W.2d 977, 980 (1941).

■ In considering the reservation in the light of these principles, it is to be remembered that the owner of minerals may convey, or reserve in his conveyance, all or any part of his interest in the minerals. *Schlittler v. Smith*, 128 Tex. 628, 101 S.W.2d 543, 544 (1937). The mineral interests conveyed and those retained are disclosed by an analysis of the provisions of the reservation in sequential order.

■ The first sentence, which reserves to the grantors, their heirs and assigns, "all oil, gas and other minerals in, under and that may be produced from" the 40-acre tract, effects a reservation of the mineral fee interest. *Watkins v. Slaughter*, 144 Tex. 179, 189 S.W.2d 699, 700 (1945). At this point, the reservation severs the 40-acre mineral estate, carrying with it every attribute of an estate in fee simple, *Humphreys-Mexia Co. v. Gammon*, 113 Tex. 247, 254 S.W. 296, 302 (1923), including the sole authority to execute leases of the mineral estate. *Klein v. Humble Oil & Refining Co.*, 126 Tex. 450, 86 S.W.2d 1077, 1079 (1935).

■ However, the mineral estate reserved is limited by the provisions of the second sentence. By those proscriptions, the owner of the mineral estate does not receive any of the bonus paid for any lease of the mineral estate nor any of the rentals paid to keep the lease in force. The effect of this limitation is that the interest in bonuses and delay rentals were conveyed with the realty, *Benge v. Scharbauer*, 152 Tex. 447, 259 S.W.2d 166, 168 (1953), but the conveyance of these mineral interests

sequently achieved production in paying quanti- ties.

does not operate to convert the mineral interest otherwise reserved into a reservation of a royalty interest. *Grissom v. Guetersloh*, 391 S.W.2d 167, 171 (Tex.Civ. App.—Amarillo 1965, writ ref'd n.r.e.).

■ The conveyance of the bonus and delay rental interests is followed by the third sentence provision, the last expression regarding the reservation, which states that the owner of the reserved mineral estate "shall receive money from such lease only in case of actual production of oil, gas or other minerals" from the tract. This language, considered in its proper context, is not a further limitation on the mineral estate reserved; it merely is reiteration that the owner of the reserved mineral estate, out of which the bonus and delay rental interests were carved and conveyed, is to receive compensation under a lease only if there is actual production of the minerals he owns. *Accord, Watkins v. Slaughter, supra.*

■ This analyzation, consistent with the applicable principles by which it was undertaken, gives effect to and harmonizes every provision of the reservation, thereby clearly disclosing the parties' intention of its one legal meaning. That meaning is that the entire mineral estate, excepting only the bonus and delay rental interests that were conveyed, was retained, the retention of which includes the right to execute leases of the mineral estate. Therefore, the reservation is unambiguous, and the trial court's rendition of summary judgment was proper.

Obviously, our conclusion was reached with the awareness of Diamond Shamrock's contention, and its expressed rationale, that the reservation is ambiguous. Necessarily, then, the contention and its underlying rationale were rejected, but Diamond Shamrock's position deserves a more direct address.

The contention for ambiguity is premised on Diamond Shamrock's view that conceding the language of the first sentence is indicative of a reservation of a mineral interest, the language contained in the subsequent sentences is "royalty" language requiring a contrary conclusion and at least implying a grant of the executive rights. Its argument for the acceptance of the language as that of a royalty interest and an implied grant of the executive rights is primarily referenced to the decisions in *Watkins v. Slaughter, supra, Grissom v. Guetersloh, supra,* and *Hudgins v. Lincoln National Life Insurance Company,* 144 F.Supp. 192 (E.D.Tex.1956). In our view, none of those decisions, each an interpretation of a reservation different from the one before us, operates either to impart ambiguity to the reservation or to impress it with another meaning.

■ The one-sentence reservation of a ¹⁄₁₆ interest in *Watkins* consisted of four clauses. The first clause, considered alone, reserved a ¹⁄₁₆ mineral fee interest; but, the following three clauses, describing the retained interest with its attached incidents and rights, which did not include the specifically conveyed right to lease, announced, in the words of the last clause, "and the grantor, his heirs or assigns, shall receive the royalty retained herein only from actual production of oil, gas or other minerals on said land." The court, noting that the word "royalty" has a well understood meaning, held that the reservation was, as described, a royalty interest which, in the quoted language of the intermediate appellate court, was in complete harmony with the other provisions and to hold otherwise, it would be necessary to disregard completely the last clause, a prohibition under all rules of interpretation. 189 S.W.2d at 700–01. There is, of course, no designation that a royalty interest was retained in the reservation we consider; and, to give it that interpretation, we would either have to ignore the plain language of the first sentence or create a conflict between the reservation's provisions where none appears under the sound rules of interpretation, which must be applied. *Southland Royalty Co. v. Pan American Petro. Corp.,* 378 S.W.2d 50, 57 (Tex.1964).

■ Still, Diamond Shamrock argues that if the reservation is construed to cre-

ate a mineral estate, as we have held, then it should be construed, agreeable to *Grissom* and *Hudgins*, as a conveyance or an implied grant of the executive right to lease. Neither *Grissom* nor *Hudgins* influenced us to credit the argument.

In *Grissom*, the grantors reserved "an undivided one-sixteenth 1–16th of all the oil, gas and other minerals in and under the tract of land hereby conveyed; But ... waive[d] all interest in and to all rentals or other consideration which may be paid to grantees for any oil and gas lease on the land ...." The parties to the deed actually disputed whether the reservation was a mineral interest or a royalty interest; they were agreed that the grantees had the exclusive right to execute oil and gas leases.

The *Grissom* court held, consistent with our interpretation of the reservation before us, that the reservation was a mineral interest which was not converted to a royalty interest by the waiver of the bonuses and delay rentals. However and apart from the parties' agreement on the executive rights, the court expressed the opinion that under the holding in *Klein v. Humble Oil & Refining Co., supra,* the grantors waived the right to execute leases in favor of the grantees. 391 S.W.2d at 171.

The pertinent wording of the *Klein* reservation stated the understanding "that *grantors* herein *are not to participate in any oil lease* or rental bonuses that may be paid on any lease ...." (Emphasis supplied.) 86 S.W.2d at 1078. In a similar manner, the *Grissom* reservation stated that "the *grantors waive all* rentals or other *consideration* which may be *paid to grantees for any oil and gas lease ....*" (Emphasis supplied.) 391 S.W.2d at 167. The reviewing court, as the *Klein* court said, "must ascribe some meaning to this language," 86 S.W.2d at 1079, which was found broad enough, after bench trials in *Klein* and *Grissom*, to be construed as including the grantees' right to execute leases. Contrastively, the more limited language of the instant reservation only carved the bonus and delay rental interest out of the mineral estate retained and, un-

like *Grissom*, there is no concession that the executive right to lease was not retained.

By the wording of the reservation in *Hudgins*, the grantor reserved "an undivided one-half (½) interest in the oil, gas and other minerals in, under and on said property but shall not be entitled to receive any part of any bonuses paid by leases or any part of the rentals that may be paid for the privilege of deferring the commencement of a well or drilling operations." 144 F.Supp. at 193. The assignee of the grantee contended that the grantor reserved only a royalty interest, and that the grantee had the right to lease the entire estate; the grantor contended that it reserved one-half of the minerals in place, which the grantee did not have the right to lease.

In declaring the parties' rights, the court found that the reservation left the intention of the grantor in doubt and, employing the constructional principle that the deed passed the greatest estate possible to the grantee, construed the reservation, with the aid of the *Klein* holding, to reserve a one-half nonparticipating mineral interest which becomes a royalty interest under any lease executed, and to evince the intention that the grantee has the power and authority to subject the entire mineral estate to leases. The court reasoned that a basic inconsistency would exist if the grantee, being entitled to bonuses and delay rentals under leases of the entire estate, could only lease an undivided one-half interest in the property. 144 F.Supp. at 198.

The distinction is apparent. The *Hudgins* court had a doubt as to the construction to be given the reservation and, applying a rule of construction, construed it against the grantor and in favor of the grantee. The applied rule of construction is inapplicable to the instant reservation, for we have no doubt that a correct interpretation of the reservation is one reserving the entire mineral estate and excepting only the bonus and delay rental interests which passed to the grantee.

The judgment is affirmed.