Charles Edward REED, Jr.; Amos E. Reed III, individually and as Representative of the Estate of Delores Perrin, Deceased; Curtis Cullen Smith, as Trustee of the Laura Dossett Smith Family Trust; Reeder Walter Dossett and Mary Martha Dossett, as Trustees of the Mary Martha Dossett Second Trust; Alethea Brooks Bateman, as Trustee of the Alethea Brooks Bateman 1993 Trust; Jane Elizabeth Sheppard; Susannah Sheppard Benner; Thomas D. Swann; Andrew R. Swann; and Alethea Swann Bugg, Appellants

v.

MALTSBERGER/STOREY RANCH, LLC; Storey Minerals, Ltd.; Tom O. Hanks; Karen R. Hanks; and TK Hanks Royalties, LP, Appellees

No. 04–16–00231–CV

Court of Appeals of Texas, San Antonio.

Delivered and Filed: May 3, 2017

Dan Pozza, Pozza & Whyte, PLLC, San Antonio, TX, for Appellants.

Timothy Patton, Timothy Patton, San Antonio, TX, P.C., Don W. Duran, Lufkin, TX, Carlos R. Soltero, McGinnis, Lochridge & Kilgore, LLP, Austin, TX, Christopher Lance Halgren, McGinnis Lochridge, Houston, TX, Adolfo Campero, Jr., Campero & Associates, P.C., Laredo, TX, for Appellees.

Sitting: Sandee Bryan Marion, Chief Justice, Karen Angelini, Justice, Irene Rios, Justice

## OPINION

Opinion by: Karen Angelini, Justice

At issue in this appeal is the interpretation of a 1942 Deed that conveys to the grantees "an undivided one-fourth (1/4) interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described lands" but then proceeds to strip certain rights of mineral ownership from the grantees. Appellants (collectively "the Reed Plaintiffs") argue the trial court erred in determining that the 1942 Deed conveys a fixed non-participating royalty interest to the grantees. According to the Reed Plaintiffs, the 1942 Deed conveys a 1/4 mineral interest and not a fixed royalty interest. Alternatively, they argue the 1942 Deed conveys a "floating" royalty interest. We agree with the Reed Plaintiffs that the 1942 Deed conveys a 1/4 mineral interest to the grantees.

### BACKGROUND

In 1942, through an instrument titled "Royalty Deed," L.V. Chenoweth conveyed to W.B. Dossett and E.M. Benz "an undivided one-fourth (1/4) interest in and to all of the oil, gas and other minerals in and under and that may be produced from" described lands in La Salle County, Texas. The 1942 Deed acknowledges that, at the time the deed was signed, the described lands were subject to an existing oil and gas lease:

And said above described lands being now under an oil and gas lease originally executed in favor of L.V. Chenoweth, Trustee and now held by said L.V. Chenoweth, Trustee, it is understood and agreed that this sale is made subject to said lease, but covers and includes one-

fourth (1/4) of all the oil royalty and gas rental or royalty due and to be paid under the terms of said lease, insofar as it covers the above described property.

The deed then strips Grantees W.B. Dossett and E.M. Benz of certain rights normally given to mineral-interest owners:

In the event the above lease to L.V. Chenoweth, trustee, shall for any reason become cancelled or forfeited, it is agreed that the joinder or consent of grantee, his heirs or assigns, shall not be required to another or new lease upon said property by L.V. Chenoweth, his heirs or assigns, nor shall grantee, his heirs or assigns, be entitled to share in any bonus consideration therefor or delay rentals thereunder, it being the purpose and intent hereof to grant and convey an undivided one-fourth (1/4) of the one-eighth (1/8) royalty (including any annual gas rentals) under said existing lease and an equivalent royalty interest under any future mineral leases thereon by the said L.V. Chenoweth, his heirs, administrators or assigns.

The underlying dispute arose out of the amount of royalty payments owed to the Reed Plaintiffs, as successors in interest to Grantees W.B. Dossett and E.M. Benz. At the time the 1942 Deed was signed, the lease referred to in the deed provided for a 1/8 royalty. The current lease, "the Hanks Lease," provides for a royalty of 22.5%.

Tom O. Hanks and Linda R. Hanks are the current lessors of the mineral estate. Their assignee is TK Hanks Royalties, L.P. Rosetta Resources Operating, L.P. ("Rosetta") is the current lessee[1] and has been conducting operations on the land described by the 1942 Deed. Rosetta was thus responsible for distributing royalty payments and had been paying a fixed 1/32 royalty to the Reed Plaintiffs as W.B. Dos-

sett's and E.M. Benz's successors in interest.

The Reed Plaintiffs, believing they owned a 1/4 mineral interest and thus were owed 1/4 of the 22.5% royalty, sued Rosetta, TK Hanks Royalties, L.P., Tom O. Hanks, and Linda R. Hanks for declaratory judgment. The Reed Plaintiffs also brought a declaratory judgment action against Maltsberger/Storey Ranch, LLC and Storey Minerals, Ltd. (collectively, "Storey"), the successors in interest to a claimed royalty reservation burdening the leased property. The Reed Plaintiffs alleged they were entitled to royalty payments calculated based on their ownership of 1/4 of the minerals as provided in the 1942 Deed. That is, the Reed Plaintiffs alleged they were entitled to 1/4 of the 22.5% royalty. Storey filed a counterclaim for declaratory relief, alleging that Rosetta had correctly construed the 1942 Deed and was properly paying the Reed Plaintiffs a 1/32 fixed royalty. Tom O. Hanks, Linda R. Hanks and TK Hanks Royalties, L.P. (collectively "the Hanks") filed a counterclaim for declaratory relief, also alleging the Reed Plaintiffs were entitled to only a 1/32 fixed royalty.

The Reed Plaintiffs moved for summary judgment, arguing that as a matter of law they were entitled to 1/4 of the 22.5% royalty provided in the Hanks Lease. Storey and the Hanks then, respectively, moved for their own summary judgment, arguing that as a matter of law the 1942 Deed conveyed to the grantees a 1/32 fixed royalty in all future leases. The Reed Plaintiffs and Storey also requested attorney's fees in their respective motions for summary judgment. The trial court denied the motion for summary judgment filed by the Reed Plaintiffs and granted the motions for summary judgment filed by Sto-

---

1. Rosetta has rights as the lessee by virtue of being an assignee of the original lessee.

rey and the Hanks. In its order, the trial court declared that "the 1942 Royalty Deed ... conveyed a fixed non-participating royalty interest to W.B. Dossett and E.M. Benz." The trial court ruled that the Reed Plaintiffs were "collectively entitled to a fixed 1/32 nonparticipating royalty interest associated with production from the property described in the Royalty Deed." It then awarded attorney's fees to Storey.

The Reed Plaintiffs bring two issues on appeal: (1) whether the 1942 Deed conveyed a mineral ownership interest or a royalty interest; and (2) if the 1942 Deed conveyed a royalty ownership interest, whether the deed conveyed a floating royalty interest or a fixed royalty interest.

### STANDARD OF REVIEW

To obtain a traditional summary judgment, a party moving for summary judgment must show that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In reviewing the grant of a summary judgment, we must indulge every reasonable inference and resolve any doubts in favor of the respondent. *Johnson*, 891 S.W.2d at 644; *Nixon*, 690 S.W.2d at 549. In addition, we must assume all evidence favorable to the respondent is true. *Johnson*, 891 S.W.2d at 644; *Nixon*, 690 S.W.2d at 548–49.

A trial court's grant of summary judgment is reviewed de novo. *Mid–Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). When both parties move for partial summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions presented, and if we determine that the trial court erred, render the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

### INTERPRETATION OF DEEDS

The primary objective in construing mineral grants is to ascertain intent from the four corners of the instrument based on the words used and not the subjective intent of the parties. *Hysaw v. Dawkins*, 483 S.W.3d 1, 8 (Tex. 2016) (citing *Luckel v. White*, 819 S.W.2d 459, 461–62 (Tex. 1991)). A court determines intent "by construing the instrument holistically and by harmonizing any apparent conflicts or inconsistencies in the language." *Id.* at 4. While the supreme court recently acknowledged the "call for more certain and predictable guidance," it nevertheless rejected "bright-line rules of interpretation that are arbitrary and, thus, inimical to an intent-focused inquiry." *Id.* The court mandated "a holistic and harmonizing approach and rejected mechanical rules of construction, such as giving priority to certain types of clauses over others or requiring the use of magic words." *Id.* at 8. The court emphasized that it could not "embrace a mechanical approach," *id.* at 4, and that to "discern intent, words and phrases must be construed together and in context, not in isolation." *Id.* at 13. "Words and phrases generally bear their ordinary meaning unless the context supports a technical meaning or a different understanding." *Id.* "Similarly, apparent inconsistencies or contradictions must be harmonized, to the extent possible, by construing the document as a whole." *Id.* "But considering whether inconsistencies might exist and how they may be harmonized is part of the process for determining intent; it is not merely a cross-check

method of validating an interpretation derived by segregating key terms and phrases." *Id.* "That is to say, meaning derived without reference to context is not confirmed merely because such a construction would not produce an inconsistency with another provision." *Id.*

### MINERAL INTEREST VS. ROYALTY INTEREST

In their first issue, the Reed Plaintiffs contend that as a matter of law, the 1942 Deed conveyed a mineral interest and not a royalty interest. "An instrument conveying land in fee simple transfers both the surface estate and all minerals and mineral rights, unless the instrument contains a reservation or expresses a contrary intention." *Hysaw*, 483 S.W.3d at 8. A mineral estate consists of five essential interests: (1) the right to develop, (2) the right to lease (the executive right), (3) the right to receive bonus payments, (4) the right to receive delay rentals, and (5) the right to receive royalty payments. *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986). "The holder of the leasing privilege is the executive-interest holder." *Hysaw*, 483 S.W.3d at 9. "The executive enjoys the exclusive right to make and amend mineral leases and, correspondingly, to negotiate for the payment of bonuses, delay rentals, and royalties, subject to a duty of utmost good faith and fair dealing to non-executive interest holders." *Id.*

"A conveyance of a mineral estate need not dispose of all interests; individual interests can be held back, or reserved, in the grantor." *French v. Chevron U.S.A. Inc.*, 896 S.W.2d 795, 797 (Tex. 1995). "However, when an undivided mineral interest is conveyed, reserved, or excepted, it is presumed that all attributes remain with the mineral interest unless a contrary intent is expressed." *Id.* (citation omitted).

"A royalty interest derives from the grantor's mineral interest and is a nonpossessory interest in minerals that may be separately alienated." *Hysaw*, 483 S.W.3d at 9 (quoting *Luckel*, 819 S.W.2d at 463). "As commonly understood, a royalty is a real property interest with two distinguishing characteristics." 1 ERNEST E. SMITH & JACQUELINE L. WEAVER, TEXAS LAW OF OIL & GAS 2–61 (Lexis Nexis 2016). "It is nonpossessory and it is free of production and operating expenses." *Id.* "The owner of such an interest has no right to explore, drill, or produce oil and gas; similarly, he normally has no right to execute oil and gas leases." *Id.* "The principal benefit conferred by royalty ownership is the right to a fraction of oil, gas, or mineral production free of drilling, mining, and operating expenses." *Id.*

Thus, the "same instrument may convey an undivided portion of the mineral estate and a separate royalty interest, and the royalty interest conveyed may be larger or smaller than the interest conveyed in the minerals in place." *Hysaw*, 483 S.W.3d at 9 (quoting *Luckel*, 819 S.W.2d at 463). "A party possessing a royalty interest that does not include the right to lease the mineral estate, receive delay rentals, or bonus payments is referred to as a non-participating royalty-interest holder." *Id.* (citation omitted).

In this manner, "[h]ybrid interests can be created." 1 ERNEST E. SMITH & JACQUELINE L. WEAVER, TEXAS LAW OF OIL & GAS 2–61 (Lexis Nexis 2016). "The separation of all possessory rights from a mineral fee interest will not automatically transform it into a royalty, and, conversely, rights normally attached to a mineral fee interest, even including the right to participate in leases, can be attached to a royalty." *Id.* (citing *Buffalo Ranch Co. v. Thomason*, 727 S.W.2d 331 (Tex. App.–Houston [1st Dist.] 1987, writ ref'd n.r.e.)

and *Elick v. Champlin Petroleum Co.*, 697 S.W.2d 1 (Tex. App.–Houston [14th Dist.] 1985, writ ref'd n.r.e.)). "More commonly the royalty owner is given specified rights to use the surface and subsurface or rights to share in lease benefits in addition to production." *Id.* (citing *Brady v. Security Home Inv. Co.*, 640 S.W.2d 731 (Tex. App.–Houston [14th Dist.] 1982, no writ)). "Although instruments creating such interests almost invariably create problems of interpretation and lead to litigation over whether the interest is a royalty or a fractional interest in the mineral fee, they are encountered with surprising frequency." *Id.* (citing *Altman v. Blake*, 712 S.W.2d 117 (Tex. 1986) and *Diamond Shamrock Corp. v. Cone*, 673 S.W.2d 310 (Tex. App.–Amarillo 1984, writ ref'd n.r.e.)).

Traditional language used to create a mineral fee is a reference to the oil, gas, and other minerals "in and under" the described land. 1 ERNEST E. SMITH & JACQUELINE L. WEAVER, TEXAS LAW OF OIL & GAS 3–22.4 (Lexis Nexis 2016); *see Garza v. Prolithic Energy Co.*, 195 S.W.3d 137, 142 (Tex. App.–San Antonio 2006, pet. denied) ("[T]he phrase 'in and under' refers to a mineral interest."); Laura H. Burney, *Interpreting Mineral and Royalty Deeds: The Legacy of the One–Eighth Royalty and Other Stories*, 33 ST. MARY'S L.J. 1, 30–31 (2001) ("In Texas, the phrase 'in and under' is viewed as indicating a mineral interest."). A royalty, on the other hand, is "typically created simply by using the word 'royalty.'" 1 ERNEST E. SMITH & JACQUELINE L. WEAVER, TEXAS LAW OF OIL & GAS 3–22.4 (Lexis Nexis 2016). "Thus a landowner may grant 'a 1/16th royalty' or a right to '1/14th of royalty,' and in either event it is clear that the grantee will receive a fraction of gross production." *Id.* (citation omitted).

"One combination of provisions encountered with some regularity begins with language indicative of a fractional interest in the mineral fee, but continues with clauses disavowing specific rights or attributes usually associated with mineral fee ownership." *Id.* at 3–22.5. This is the type of deed at issue in this appeal. The 1942 Deed begins with the "in and under" language that typically conveys a mineral interest, but then continues with language that appears to take away the traditional rights of mineral fee ownership.

One legal commentator has "analogized this type of deed to a 'mineral bug' with various portions of its anatomy pulled off." *Id.*

> The mineral bug can be given a development head, a leasing power leg, a royalty leg, a rental leg, and a bonus leg, all attached to an expense-bearing body. The device works well in analyzing the common practice of first conveying a full mineral interest and then verbally stripping away some of the mineral attributes, to leave something less than full mineral interest in the grantee. For example, our mineral bug may have been divested of its development head and its leasing leg. Is a headless, three-legged mineral bug still a mineral bug?

*Id.* (quoting Richard C. Maxwell, *Mineral or Royalty–Royalty Distinction and the Expense of Production*, 33 TEX. L. REV. 463, 471–72 (1955)).

The Texas Supreme Court has answered this question differently depending on the wording of the deed at issue. In *Watkins v. Slaughter*, 144 Tex. 179, 189 S.W.2d 699 (1945), the court appeared to answer the mineral bug question in the negative. The court considered a reservation in a deed and concluded that the deed reserved a royalty interest, and not a mineral inter-

est. The deed at·issue conveyed 80 acres of land

> [t]ogether with a 15/16 interest in and to all the oil, gas and other minerals in and under and that may be·produced from said land and the grantor *retains title to a 1/16 interest in and to all of the oil, gas and other minerals in and under and that may be produced from said land*; but it is distinctly agreed and understood that the grantor, his heirs and assigns shall not receive any part of the money rental paid on any future lease; and the grantee, his heirs or assigns shall have authority to lease said land and receive the cash bonus and rental; and the grantor, his heirs or assigns *shall receive the royalty·retained herein only from actual production* of oil, gas or other minerals on said land.

*Id.* at· 699 (emphasis added). The court noted "the grantor was careful to express his intention and meaning in·a single sentence, consisting of· four parts, separated by semicolons." *Id.* at 700. The supreme court explained that if the clause had ended at the first semi-colon with the language "produced from the land," the grantor "would have reserved a 1/16 mineral fee interest" and no dispute would arise about whether the interest reserved was only a royalty interest. *Id.* However, the court explained that the subsequent clauses in the deed progressively divested the grantor of rights associated with the mineral fee. *Id.* The grantor relinquished the right to share in bonus, a right to share in delay rentals, and a right to execute leases. *Id.* The court emphasized the fourth and final clause, which stated the grantor "shall receive the royalty retained herein only from actual production of oil, gas or other minerals on said land," identified the interest as a royalty payable only from production. *Id.* Thus, the court reasoned that the "deed contained no reserva-

tion other than the 1/16 of oil, gas and other minerals" and thus this·language in the final clause could not have "had reference to any·other item." *Id.* "It is obvious, therefore, that both the grantor and the grantee considered it to be a royalty." *Id.* The court concluded that in order· to interpret the language as a reservation of a mineral·interest, "it would be necessary to disregard completely the last clause, which designate[d] the reservation as a royalty." *Id.* Thus, the court held the grantor reserved a royalty interest and not a mineral interest. *Id.*

In contrast to *Watkins*, the supreme court in *Altman v. Blake*, 712 S.W.2d 117 (Tex. 1986), appeared to answer the mineral bug question in the affirmative. In *Altman*, the 1938 deed's granting clause conveyed "an undivided one-sixteenth (1/16) interest in and to all of the oil, gas and other minerals in and under and that may be produced from" the described tract. *Id.* at 118. The deed conveyed to the grantee "the rights of ingress and egress at all times· for the purpose of mining, drilling, exploring, and·developing said lands," but stripped the grantee of a right to "participate in any rentals or leases." *Id.* The supreme court noted that of the "five essential attributes of a severed mineral estate," the deed expressly reserved to the grantor two of the attributes: the right to lease and the right to receive rentals. *Id.* The supreme court recognized that it had "before recognized that a mineral interest shorn of the executive right and the right to receive delay rentals remains an interest in the mineral fee." *Id.* at 118–19·(citing *Delta Drilling Co. v. Simmons*, 161 Tex. 122, 338 S.W.2d 143 (Tex. 1960)).· The court explained that in *Delta Drilling*, "the grantor of an undivided one-eighth interest in a severed mineral estate had reserved the exclusive right to lease the property along with the right to receive all delay

rentals." *Altman*, 712 S.W.2d at 119. "Nonetheless, [the court] concluded that the grantee was the owner of a mineral interest and therefore entitled only to one-eighth of the royalty reserved in an oil and gas lease and not to a one-eighth royalty." *Id.*

The supreme court in *Altman* noted that the respondents were relying on *Watkins* to support their position that the deed in *Altman* "conveys a royalty interest rather than a mineral interest." *Altman*, 712 S.W.2d at 119. The supreme court distinguished *Watkins*, explaining that in *Watkins*, the deed "unequivocally stated that the grantor should 'receive the royalty retained herein only from actual production.'" *Altman*, 712 S.W.2d at 119. The court explained that in *Watkins*, it had "placed great emphasis on the parties' designation of [the grantor]'s retained interest as a royalty interest." *Altman*, 712 S.W.2d at 119. The court emphasized that "[t]here [was] no such direct language of royalty" in the deed at issue in *Altman*. *Id.* Thus, the supreme court concluded "the intent of the parties as expressed by the terms of this deed was to convey a mineral interest." *Id.*

Similarly, in *French v. Chevron USA, Inc.*, 896 S.W.2d 795 (Tex. 1995), the supreme court held that the deed conveyed a mineral interest and not a royalty interest. The 1943 deed at issue in *French* conveys "an undivided 1/656.17th interest *in and to all of the oil, gas and other minerals, in, under and that may be produced* from the following described lands ...." *Id.* at 796 (emphasis added). The deed then removes rights normally granted to the mineral fee owner:

> It is understood and agreed that this conveyance is a royalty interest only, and that neither the Grantee, nor his heirs or assigns shall ever have any interest in the delay or other rentals or any revenues or monies received or derived from the leasing of said lands present or future or any part thereof, or the renewal or extension of any lease or leases now on said lands or any part thereof. Neither the Grantee herein nor his heirs or assigns shall ever have any control over the leasing of said lands or any part thereof or the renewal or extending of any lease thereon or for the making of any lease contract to develop or prospect the same for oil, gas or other minerals, which is hereby specifically reserved in the Grantor.

*Id.* (emphasis in original). Thus, of the five essential attributes of a severed mineral estate, the deed reserved to the grantor four, leaving the grantee with only the right to receive royalty. *See id.* The supreme court explained that "[w]hile the first paragraph appears to grant a mineral estate," the second paragraph "specifically states that the interest conveyed is a royalty interest only." *Id.* at 797. "The clause in the second paragraph, beginning 'and that,' sets forth the consequences of the royalty interest only declaration, by going further to specifically reserve in the grantor the four components of a mineral estate other than the royalty: the rights to lease, to receive bonus payments, to receive delay rentals and to develop or prospect." *Id.* Nevertheless, the supreme court interpreted the deed "to have conveyed a 1/656.17 mineral interest with reservation of all developmental rights, leasing rights, bonuses, and delay rentals." *Id.* The supreme court explained that "[f]irst, the granting clause must be read in light of the rest of the document." *Id.* The court noted that the first paragraph "states that the grantor is conveying a fifty acre interest." *Id.* "A 'fifty acre interest' is 1/656.17 of the 32,808.5 tract, and the deed then recites that it is conveying 'an undivided 1/656.17th interest in and to all of the oil, gas, and

other minerals in, under, and that may be produced from the described lands.'" *Id.* at 797–98. According to the court, "[s]tanding alone, this would convey a 1/656.17 interest in the minerals." *Id.* at 798. The court reasoned that "[p]aragraph two indicates that the interest in the minerals conveyed in paragraph one is a royalty interest." *Id.* "The remainder of paragraph two is best interpreted as explaining the consequences of the 'royalty only' description." *Id.* "It reserves in the grantor the right to receive delay or other rentals, or any revenues from the leasing or from any renewal or extension of any lease." *Id.* The court reasoned that *"[t]his reservation would be redundant and would serve no purpose whatsoever if the interests in minerals being conveyed was a 1/656.17 royalty interest,* that is, 1/656.17 of all production." *Id.* (emphasis added). The court emphasized that "[a] grant of a royalty interest, without any further grant, does not convey an interest to the grantee in delay or other rentals, or in bonus payments, nor would it convey executive rights." *Id.* "The meaning of this grant is to convey an interest in the nature of ı a royalty–a mineral interest stripped of appurtenant rights other than the right to receive royalties." *Id.* The supreme court concluded that from the four corners of the document, "the parties intended to convey a 1/656.17 mineral interest with the reservations described, thus conveying only the royalty portion of the mineral interest." *Id.* Thus, the court rendered judgment that the deed conveyed to the grantee "a 1/656.17 interest in the minerals and not 1/656.17 of production as royalty." *Id.*

This holding in *French* led some commentators to conclude the supreme court had implicitly overruled *Watkins. See* 1 ERNEST E. SMITH & JACQUELINE L. WEAVER, TEXAS LAW OF OIL & GAS 3–24.1 (Lexis Nexis 2016). However, the supreme court in *Temple–Inland Forest Products Corp. v.*

*Henderson Family Partnership,* 958 S.W.2d 183 (Tex. 1997), made clear that *Watkins* remained good law.

*Temple–Inland* concerned two virtually identical deeds. They provided the following:

> Grantor[s] ... grant, bargain, sell, convey ... an undivided fifteen sixteenths (15/16ths) interest in, to and of all oil, gas and other minerals ... that may be produced from the following described land
>
> ....
>
> In respect to the undivided one-sixteenth (1/16) part of and interest in the oil, gas and other minerals retained and reserved by the Grantor in said land, it is understood and agreed that *said one-sixteenth (1/16) interest is and shall always be a royalty interest,* and *shall not be charged with any of the costs* which the Grantee may incur in exploring, drilling, mining, developing, and operating wells or mines for the production of oil, gas and other minerals; and ... Grantor's one-sixteenth (1/16th) royalty interest ... shall be delivered free of cost to the Grantor at the wells or mines or to the credit of Grantor in pipe lines or storage by the Grantor.

*Temple–Inland,* 958 S.W.2d at 184 (emphasis in original). The clause further stated that the grantor "shall not be required to join in or ratify" oil and gas leases and "shall be entitled to none of the bonus money therefor and to no part of the delay rentals paid thereunder." *Id.* The court noted that "the deeds at issue are similar to the conveyance construed in *Watkins*" because the "deed in *Watkins,* like these deeds, purported to convey a 15/16 interest in the minerals." *Temple–Inland,* 958 S.W.2d at 185. However, the court explained that the deed in *Watkins* continued

with further language, making reference to "the royalty retained herein" to be paid from production while the grantee would receive all delay rentals, the executive rights, and all bonuses. *Id.* The supreme court noted that the "deed in *Watkins*, when considered as a whole, reserved a 1/16 royalty." And, the court made clear that it was "adher[ing] to [its] decision in *Watkins*" and holding that, like in *Watkins*, the deed in *Temple–Inland* reserved a 1/16 fixed royalty and not a mineral interest. *Temple–Inland*, 958 S.W.2d at 185.

The court then explained that its decision in *French* "did not overrule *Watkins*." *Temple–Inland*, 958 S.W.2d at 185. The court distinguished *French* from *Watkins* by pointing to specific language in the *French* deed. *Id.* The court emphasized that it has "never required that any particular word or phrase be used" but instead has required that courts determine the "interest conveyed or reserved" "from all the provisions of the instrument." *Id.* at 185–86. The court explained that the language of the deeds at issue in *Temple–Inland* "leave no room for doubt that a royalty interest was reserved." *Id.* at 186. "The word 'royalty' is used no less than six times in each deed, and the interest retained is free of the costs of drilling and production." *Id.* Considering the entire instrument, the court concluded the deeds "each reserved a 1/16 royalty interest." *Id.*

The supreme court has therefore not definitively answered the question of whether a mineral bug shorn of its head and three of its legs is still a mineral bug. Instead, the supreme court has been clear that there is no bright-line rule in determining when a mineral interest remains a mineral interest. *See id.* at 185–86. Instead, the supreme court has mandated that courts determine the intent of the parties using a "holistic and harmonizing approach." *Hysaw*, 483 S.W.3d at 8–9.

This court has relied on the above supreme court precedent in determining whether an instrument conveyed a mineral or royalty interest. In *Garza v. Prolithic Energy Co.*, 195 S.W.3d 137, 138, 142 (Tex. App.–San Antonio 2006, pet. denied), this court construed two separate deeds and determined that, despite one being titled "Royalty Contract" and the other being titled "Mineral Deed," both deeds conveyed mineral interests.

The "Royalty Contract" in favor of J.B. Claypool conveyed "an undivided one-half (1/2) interest in and to all of the oil, gas and other minerals in and under the [Property] .... Together with the rights of ingress and egress at all times for the purpose of taking said minerals." *Id.* at 139. It further provided the following:

It is distinctly understood and herein stipulated that said land is under an Oil and Gas Lease made by Grantor providing for a royalty of 1/8th of the oil and certain royalties or rentals for gas and other minerals and that Grantee herein shall receive one-half (1/2) of the royalties and rentals provided for in said lease insofar only as said lease covers the land hereinabove described; but he shall have no part of the annual rentals paid to keep said lease in force until drilling has begun. It is further agreed that Grantee shall have no interest in any bonus money received by the Grantor in any future lease or leases given on said land, and that it shall not be necessary for the grantee to join in any such lease or leases so made; That Grantee shall receive under such lease or leases one-sixteenth (1/16th) part of all oil, gas and other minerals taken and saved under such lease or leases, and he shall receive the same out of the

royalty provided for in such lease or leases, but Grantee shall have no part in the annual rentals paid to keep such lease or leases in force until drilling is begun.

TO HAVE AND TO HOLD the same unto the said Grantee, his heirs and assigns, forever; and we hereby bind ourselves, our heirs, executors and administrators to WARRANT and FOREVER DEFEND all and singular the said minerals unto the said Grantee, his heirs and assigns, against all persons whomsoever lawfully claiming or to claim the same or any part thereof.

*Id.* at 139–40.

The "Mineral Deed" in favor of Homer P. Lee conveyed "an undivided fifteen-thirty-seconds (15/32) interest in and to all of the oil, gas and other minerals in and under the [Property] ... together with the rights of ingress and egress at all times for the purpose of taking said minerals." *Id.* at 140. The Mineral Deed contained similar provisions to the Contract:

It is distinctly understood and herein stipulated that said land is under an Oil and Gas Lease made by Grantor providing for a royalty of 1/8th of the oil and certain royalties or rentals for gas and other minerals, and that Grantee herein shall receive 15/32nds of the royalties and rentals provided for in said lease; insofar as it covers the above described land; but he shall have no part of the annual rentals paid to keep said lease in force until drilling is begun.

It is further agreed that Grantee shall have no interest in any bonus money received by the Grantor in any future lease or leases given on said land, and that it shall not be necessary for the Grantee to join in any such lease or leases so made. Nevertheless, neither the Grantor, nor the heirs, administrators, executors and assigns of the Grantor shall make or enter into any lease or contract for the development of said land, or any part of same, for oil, gas or other minerals, unless each and every such lease, contract, leases, or contracts, shall provide for at least royalty of the usual one-eighth to be delivered free of cost in the pipe line, and a royalty on natural gas of one-eighth of the value of same when sold or used off the premises, or one-eighth of the net proceeds of such gas; and one-eighth of the net amount of gasoline manufactured from natural or casinghead gas. That Grantee shall receive under such lease or leases 15/32 of 1/8 part of all oil, gas and other minerals taken and saved under any such lease or leases, and he shall receive the same out of the royalty provided for in such lease or leases, but Grantee shall have no part in the annual rentals paid to keep such lease or leases in force until drilling is begun.

TO HAVE AND TO HOLD the same unto the said Grantee, his heirs and assigns forever; Grantors hereby bind themselves, their heirs, executors and administrators to Warrant and Forever Defend all and singular the said minerals unto the said Grantee, his heirs and assigns, against all persons whomsoever lawfully claiming or to claim the same or any part thereof.

*Id.* at 140.

The lease in effect at the time the Royalty Contract and Mineral Deed were signed provided for the payment of a 1/8 royalty. *Id.* After that lease terminated, the new lease provided for a 1/5 royalty. *Id.* In determining whether the deeds at issue conveyed mineral interests or royalty interests, this court relied on *Altman*'s statement that "a mineral interest shorn of the executive right and the right to receive

delay rentals remains an interest in the mineral fee." *Id.* at 142 (quoting *Altman,* 712 S.W.2d at 118–19). This court then discussed the supreme court's holding in *French* where the supreme court "interpreted the transfer to have conveyed a mineral interest with reservation of all developmental rights, leasing rights, bonuses, and delay rentals." *Id.* (discussing *French,* 896 S.W.2d at 796). This court emphasized the supreme court's conclusion that "the reservation of the various attributes of a severed mineral estate would have been redundant if only a royalty interest was conveyed." *Id.* Applying that reasoning, this court explained that "[s]imilarly, the deeds at issue in this case convey an undivided interest in and to all of the oil, gas and other minerals in and under the property and reserve in the grantors at least the second, third, and fourth *Altman* rights." *Id.*

> Although the right to develop, referred to as the right of ingress and egress, appears to be expressly conveyed in the deeds, the court in *French* stated "the right to develop is a correlative right and passes with the executive rights." Accordingly, it is unclear whether the deeds reserved the first *Altman* right. Nevertheless, the phrase "in and under" refers to a mineral interest. *See generally* Laura H. Burney, *Interpreting Mineral and Royalty Deeds: The Legacy of the One–Eighth Royalty and Other Stories,* 33 St. Mary's L.J. 1, 30–31 (2001). Furthermore, the reservation of the second, third, and fourth *Altman* rights would have been redundant if the deeds intended to convey a royalty interest.

*Garza,* 195 S.W.3d at 142. Therefore, this court held that the deeds at issue conveyed mineral interests. *Id.*

Similarly, in *Hamilton v. Morris Resources, Ltd.,* 225 S.W.3d 336 (Tex. App.–San Antonio 2007, pet. denied), this court considered language nearly identical to the Royalty Contract at issue in *Garza* and determined that the instruments conveyed a fractional nonparticipating mineral fee interest, and not a fixed royalty. This court relied on *Altman* for its statement that "a mineral interest shorn of the executive right and the right to receive delay rentals remains an interest in the mineral fee." *Hamilton,* 225 S.W.3d at 345. And, similar to *Garza,* this court noted that if the grantors "had meant to convey only a royalty interest, they need not have reserved to themselves the right to receive delay rentals and cash bonuses because '[a] grant of a royalty interest, without any further grant, does not convey an interest to the grantee in delay or other rentals, or in bonus payments, nor would it convey executive rights.'" *Hamilton,* 225 S.W.3d at 345 (quoting *French,* 896 S.W.2d at 798). Thus, this court reasoned that reserving to the grantors "the right to rentals and cash bonuses would have been redundant because a royalty interest is a non-possessory interest that does not include the right to receive rentals or bonuses." *Id.* Thus, as in *Garza,* this court construed the instruments to convey an undivided 1/4 mineral interest. *Id.*

Finally, in *Coates Energy Trust v. Frost Nat'l Bank,* 2012 WL 5984693 (Tex. App.–San Antonio 2012, pet. denied), this court again considered language in a deed that was similar to the language in *Garza* and *Hamilton.* Using the same reasoning as those cases, this court again held that a mineral interest was conveyed. *See Coates Energy,* 2012 WL 5984693, at *5. This court explained that the instruments "bear the mineral ownership hallmarks this court recognized in *Garza* and *Hamilton*: a grant containing the traditional 'in, on, and under' language used to create a mineral

fee, followed by express reservation of certain mineral attributes (here, rights to lease and receive delay or rental payments)." *Coates Energy*, 2012 WL 5984693, at *5.

■ In considering the above precedent by the supreme court and this court, we conclude that the 1942 Deed at issue is similar to those presented in *Altman, French, Garza, Hamilton*, and *Coates Energy*. While Storey emphasizes that the 1942 Deed is titled "Royalty Deed," we must look at the instrument as a whole and seek to harmonize its provisions to construe intent. Thus, the title "Royalty Deed" is not determinative on its own. In looking at the entire instrument, we note the 1942 Deed begins with a granting clause that contains traditional hallmarks of mineral fee ownership:

> That I, L.V. Chenoweth ... do grant, bargain, sell, convey, set over and assign and deliver unto W.B. Dossett and E.M. Benz, the following to-wit: an undivided one-fourth (1/4) interest in and to all of the oil, gas and other minerals *in and under* and that may be produced from" described lands in La Salle County, Texas.

(emphasis added). The 1942 Deed then acknowledges that, at the time the Deed was signed, the described lands were· subject to an existing oil and gas lease:

> And said above described lands being now under an oil and gas lease originally executed in favor of L.V. Chenoweth, Trustee and now held by L.V. Chenoweth, Trustee, it is understood and agreed that this sale is made subject to said lease, but covers and includes one-fourth (1/4) of all the oil royalty and gas rental or royalty due and to be paid under the terms of said lease, insofar as it covers the above described property.

The 1942 Deed then strips Grantees W.B. Dossett and E.M. Benz of certain rights:

> In the event the above lease to L.V. Chenoweth, trustee, shall for any reason become cancelled or forfeited, it is agreed that the joinder or consent of grantee, his heirs or assigns, shall not be required to another or new lease upon said property by L.V. Chenoweth, his heirs or assigns, nor shall grantee, his heirs or assigns, be entitled to share in any bonus consideration therefor or delay rentals thereunder, it being the purpose and intent hereof to grant and convey an undivided one-fourth (1/4) of the one-eighth (1/8) royalty (including any annual gas rentals) under said existing lease and an equivalent royalty interest under any future mineral leases thereon by the said L.V. Chenoweth, his heirs, administrators or assigns.

As in *French, Hamilton, Garza* and *Coates Energy*, if the grantor had intended to convey only a royalty interest, this language stripping the grantee of rights would be redundant because a royalty interest owner has no such rights. *See French*, 896 S.W.2d at 798; *Hamilton*, 225 S.W.3d at 345; *Garza*, 195 S.W.3d at 142; *Coates Energy*, 2012 WL 5984693, at *5. This language is only meaningful if the grantor intended to convey a mineral interest and then intended to strip certain rights of ownership from the grantee. Further, this interpretation harmonizes the last provision regarding future royalties:

> it being the purpose and intent hereof to grant and convey an undivided one-fourth (1/4) of the one-eighth (1/8) royalty (including any annual gas rentals) under said existing lease and an equivalent royalty interest under any future mineral leases thereon by the said L.V. Chenoweth, his heirs, administrators or assigns.

That is, the lease in existence at the time the 1942 Deed was signed provided for a

1/8 royalty, and the grantees were entitled to 1/4 of that 1/8 royalty. This provision makes clear that under future leases, which may provide for an amount different from a 1/8 royalty, the grantees will be entitled to "an equivalent royalty interest"—that is, 1/4 of any future royalty negotiated. This interpretation considers the 1942 Deed as a whole and harmonizes all provisions. We therefore hold that the interest conveyed in the 1942 Deed is a mineral interest and not a royalty interest.

Having determined that the 1942 Deed conveys a mineral interest, we need not consider the Reed Plaintiffs' alternative argument in the second issue.

### CONCLUSION

Because we conclude the 1942 Deed conveys a 1/4 mineral interest, we reverse the judgment of the trial court, including the award of attorney's fees, and render judgment that the 1942 Deed conveys a 1/4 mineral ownership interest to the grantees. Because the Reed Plaintiffs are now the prevailing party, we remand this cause to the trial court for consideration of the Reed Plaintiffs' request for attorney's fees.