

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00610-CV

Michael P. **GEARY**, Independent Executor of the Estate of Joseph William Geary Jr., Deceased;
and Falcon Energy, Inc.,
Appellants

v.

**TWO BOW RANCH LIMITED PARTNERSHIP;**
Two Bow Management, LC; and Ronald L. Toms, Individually,
Appellees

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2015-CI-03609
Honorable David A. Canales, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Patricia O. Alvarez, Justice
                Irene Rios, Justice
                Beth Watkins, Justice

Delivered and Filed: January 22, 2020

AFFIRMED

This appeal arises from a dispute over the interpretation of a 1981 warranty deed and its application to a 2011 mineral lease. Appellants argued that Appellees breached their contractual and fiduciary duties to Appellants. The trial court concluded Appellants owed no duty to Appellees with respect to the leased mineral interests, and it granted a take-nothing summary judgment against Appellants in favor of Appellees. We affirm the trial court's order.

BACKGROUND

A.      Parties

Appellants are Michael P. Geary, as Independent Executor of the Estate of Joseph William Geary Jr., Deceased;[1] and Falcon Energy, Inc.   Appellees are Two Bow Ranch, Limited Partnership; Two Bow Management, P.C.; and Ronald L. Toms.

B.      Transactions Underlying the Lawsuit

*1.      The 1981 Deed*

In 1981, B.M. Rankin Jr., W.K. McWilliams Jr., and Joseph W. Geary (Grantors) each owned an undivided one-third interest in 2,614 acres of real property in Bandera County, Texas. That year, they executed a warranty deed which conveyed that real property (the Property) to Meader Construction Company, Inc. as follows:

> [Grantors] by these presents do GRANT, SELL and CONVEY unto MEADER CONSTRUCTION CO., INC. (herein referred to as "Grantee") all that certain real property situated in Bandera County, Texas described within Exhibit "A" attached hereto, together with . . . one-half (1/2) of all oil, gas and other minerals and related executory rights and interests associated therewith currently held by Grantors (all of which is collectively referred to herein as "the Property").
>
> Grantors expressly reserve and retain unto themselves one-half (1/2) of all oil, gas and other minerals and related executory rights and interests associated therewith currently held by Grantors.  Grantee may control the executory rights pertaining to the minerals provided the Grantors and Grantee share equally in any and all proceeds related thereto.
>
> . . . .
>
> TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said Grantee, its successors and assigns forever . . . .

---

[1] In our recitation of the facts pertaining to this litigation, "Geary" refers to Joseph William Geary Jr., who died while this litigation was pending, but in other instances, Geary refers to Michael P. Geary as independent executor of the estate of Joseph William Geary Jr.

We will refer to the sentence stating "Grantee may control the executory rights pertaining to the minerals provided the Grantors and Grantee share equally in any and all proceeds related thereto" as the Provisional Authority.

As a result of the 1981 Deed, Meader owned an undivided one-half mineral interest in the conveyed acreage, and Grantors each owned an undivided one-sixth mineral interest in that acreage. Rankin later conveyed his mineral interest to Falcon.

*2.     The 1991 and 1999 Deeds*

In 1991, Meader conveyed the Property, including "all of [Meader's] right, title and interest in and to . . . all oil, gas, sulphur and other minerals, in or under the Land, whether Grantor is the current owner, lessor or lessee," to Bandera Game Ranch Limited Partnership. This conveyance was expressly made subject to the original Grantors' reservation of one-half of the minerals.

Bandera Game Ranch conveyed the Property[2] to Two Bow Ranch in 1999. This conveyance was also expressly made subject to the original Grantors' reservation of one-half of the minerals.

*3.     The 2001 and 2006 Mineral Leases*

In 2001, Two Bow Ranch executed a mineral lease with Devon SFS Operating, Inc. This lease covered 2,356.695 acres and, thus, purported to cover all of the minerals underlying the Property. Also in 2001, Rankin and Geary each executed mineral leases with W4 Resources purporting to cover all of the minerals underlying the Property. Geary and Falcon contend that these transactions were ratifications of the 2001 Two Bow lease, despite the fact that their leases are with a different entity.

---

[2] The Property is described in the 1981 Deed as encompassing 2,614 acres. The conveyance to Bandera Game Ranch was for 2,357.24 acres. The conveyance to Two Bow Ranch was for 2,356.695 acres. The record does not explain these discrepancies, but they do not impact our analysis of the issues presented. We refer to the real property conveyed in each of these transactions as "the Property."

In 2006, Two Bow Ranch executed a mineral lease with Parke Energy. This lease purported to cover all the minerals underlying the Property, as well as two smaller tracts owned entirely by Two Bow Ranch. Rankin and Geary thereafter each signed a document stating that "the undersigned hereby adopts, ratifies and confirms said Lease and hereby grants, Leases and lets unto Lessee the above described lands subject to and in accordance with all the terms and provisions of said Lease." The "above described lands" encompassed the entire Property. Geary and Falcon contend that these transactions were simply ratifications of the 2006 Two Bow lease.

*4.      The 2011 Lease*

In 2011, Two Bow Ranch executed a mineral lease (2011 Lease) with Whiting Oil and Gas Corporation identifying the same three tracts of land as the 2006 Two Bow lease with Parke Energy. The 2011 Lease provides as follows:

> If this Lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said Land than the entire and undivided fee simple estate (whether Lessor's interest is herein specified or not), the royalties and other monies accruing from any part as to which this Lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by the Lease, bears to the whole and undivided fee simple estate therein.

Two Bow Ranch received a lease bonus payment of $174,498, which Geary and Falcon contend should be shared with them under the Provisional Authority clause of the 1981 Deed.

**B.      Procedural History**

*1.      Geary and Falcon Sue Two Bow Ranch*

Geary and Falcon sued Two Bow Ranch, Two Bow Management, and Toms. Because only Two Bow Ranch was a party to the transactions here at issue, we will refer to these parties collectively as "Two Bow Ranch." In their live pleading at the time of the summary judgment hearing, Geary and Falcon alleged claims for breach of fiduciary duty, breach of a duty to account, fraud, breach of a duty to lease, unjust enrichment, and breach of contract. The basis of each of

their claims is that Two Bow Ranch owed them contractual and fiduciary duties arising from the terms of the 1981 Deed. They alleged that, if the 2011 Lease covers only Two Bow Ranch's one-half mineral interest, then Two Bow Ranch breached a duty to lease Geary and Falcon's reserved mineral interest on the same terms. They alleged in the alternative that, if the 2011 Lease covers the entire mineral interest, then Two Bow Ranch breached a duty to share the lease bonus payment with them.

Two Bow Ranch responded with a counterclaim seeking three declarations:

1. Regarding the 1981 Warranty Deed, to the extent any executive right or power related to Plaintiffs' reserved mineral interests was given to the grantee (whether such right or power was mandatory full and exclusive control of the executive rights, or merely a permissive or optional right to control executive rights) such right or power was exercisable only by Meader Construction Co., Inc., the grantee in the 1981 Warranty Deed, and was non-assignable.

2. The 1981 Warranty Deed does not convey to the grantee the exclusive right to exercise executive rights attributable to Plaintiffs' mineral interests.

3. The 2011 Lease leased only the mineral acres owned by Two Bow Ranch in the acreage described in the Lease.

The second and third declarations were requested in the event the court did not grant the first.[3]

### 2. Two Bow Ranch Obtains Summary Judgment

Two Bow Ranch moved for a traditional summary judgment on its requested declarations. It also moved for a partial no-evidence summary judgment on Falcon's claims on the ground that there is no evidence that Falcon is a successor-in-interest to any of the grantors' interests under the 2011 Lease. Geary and Falcon responded on the merits and objected to portions of Two Bow Ranch's summary judgment evidence. The record does not contain any ruling on those objections.

---

[3] Two Bow Ranch also filed third-party claims against Whiting, who responded with a counterclaim for breach of contract. Whiting obtained a summary judgment on Two Bow Ranch's third-party claims and the entire third-party action was ultimately severed from the suit between Geary and Falcon and Two Bow Ranch.

The trial court granted Two Bow Ranch's motion for traditional summary judgment and recited the following in its order:

> [T]he Court has determined that, to the extent any executive right or power related to Plaintiffs' reserved mineral interests was given to the grantee under the 1981 Warranty Deed, such right or power could be exercised only by Mead[e]r Construction Co., Inc., the grantee in the 1981 Warranty Deed. Therefore, Defendants had no executive rights or powers under the 1981 Warranty Deed, and owed no corresponding duty to Plaintiffs with regard to leasing of mineral interests at issue in this case. For these reasons, Defendants are entitled to summary judgment on all Plaintiffs' claims.

The order further recites that Plaintiffs take nothing on their claims. Geary and Falcon appeal.

### ISSUES ON APPEAL

Geary and Falcon raise seven issues on appeal, which can be roughly grouped as follows: the trial court erred by granting summary judgment because (1) the Provisional Authority was assignable and was assigned to Two Bow Ranch; (2) Two Bow Ranch breached contractual and fiduciary duties to share the lease bonus received on the 2011 Lease; (3) Two Bow Ranch breached fiduciary duties to either lease Geary and Falcon's mineral interest on the same terms as it leased its own, or to inform Geary and Falcon that Two Bow Ranch was leasing its own one-half mineral interest; (4) reversal and remand are necessary if either the 1981 Deed or the 2011 Lease is ambiguous; and (5) Geary and Falcon are entitled to attorney's fees.

### STANDARD OF REVIEW

We review the grant of a summary judgment de novo; we take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The burden on the party moving for summary judgment is to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 215–16 (citing TEX. R. CIV. P. 166a(c)).

RULES OF CONSTRUCTION

The interpretation of an unambiguous deed presents a question of law. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). An instrument "is ambiguous only when the application of the applicable rules of interpretation to the instrument leave it genuinely uncertain which one of the two meanings is the proper meaning." *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex. 1980). Stated conversely, an instrument is not ambiguous "if it can be given a certain or definite legal meaning or interpretation." *Lopez v. Muñoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000).

"The primary duty of a court when construing such a deed is to ascertain the intent of the parties from all of the language in the deed by a fundamental rule of construction known as the 'four corners' rule." *Luckel*, 819 S.W.2d at 461. We employ a construction that harmonizes and gives effect to all provisions. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005); *accord Hysaw v. Dawkins*, 483 S.W.3d 1, 13 (Tex. 2016). Additionally, we give the terms used "their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Dorsett*, 164 S.W.3d at 662; *accord Hysaw*, 483 S.W.3d at 13. Finally, "[t]o discern intent, words and phrases must be construed together and in context, not in isolation." *Hysaw*, 483 S.W.3d at 13; *accord Reed v. Maltsberger/Storey Ranch, LLC*, 534 S.W.3d 51, 55 (Tex. App.—San Antonio 2017, pet. denied).

SUMMARY JUDGMENT ON TWO BOW RANCH'S CLAIMS

A.    **Transfer of the Provisional Authority**

*1.    The Parties' Positions*

The central question in this appeal is whether Two Bow Ranch had any authority (and, concomitantly, any duty) to exercise Geary and Falcon's executive rights in their retained one-half mineral interest. The 1981 Deed expressly gave Meader the authority to "control the executory

rights pertaining to the minerals provided the Grantors and [Meader] share equally in any and all proceeds related thereto." The parties disagree on whether this Provisional Authority was exercisable only by Meader, or whether it was transferred through subsequent conveyances of the Property to Two Bow Ranch.

Geary and Falcon argue that the Provisional Authority was part and parcel of one complete conveyance of the Property. As a result, they urge, that authority was transferred along with the Property from Meader to Bandera Game Ranch in 1991 and then from Bandera Game Ranch to Two Bow Ranch in 1999.

Two Bow Ranch argues that each clause of the 1981 Deed must be interpreted in light of its purpose and that, employing such a construction, the Provisional Authority was given only to Meader and did not pass through subsequent conveyances.

We agree that the terms of the deed must be construed according to their purpose and context. *See Hysaw*, 483 S.W.3d at 13; *Reed*, 534 S.W.3d at 56. And we also agree that the deed must be construed as a whole and its terms harmonized where possible. *See Hysaw*, 483 S.W.3d at 13; *Dorsett*, 164 S.W.3d at 662. We begin our analysis with the 1981 Deed's plain language.

2.      *Ownership of the Grantors' Executive Rights*

"The executive right—one of the 'bundle of sticks' inherent in mineral ownership—encompasses the right to execute oil and gas leases." *Tex. Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 652 (Tex. 2019) (citing *Lesley v. Veterans Land Bd. of State*, 352 S.W.3d 479, 480–81 (Tex. 2011)). Stated conversely, "[t]he holder of the leasing privilege is the executive-interest holder." *Reed*, 534 S.W.3d at 56 (quoting *Hysaw*, 483 S.W.3d at 9). The executive-interest holder "enjoys the exclusive right to make and amend mineral leases and, correspondingly, to negotiate for the payment of bonuses, delay rentals, and royalties, subject to a duty of utmost good faith and fair dealing to non-executive interest holders." *Id.*

Geary and Falcon argue that the 1981 Deed contains one conveyance of property that includes all rights in that property. Thus, Meader became the holder of the executive rights in the Grantors' retained mineral interest, subject to the condition that it must share with the Grantors any benefit it received from exercising those executive rights. This argument is necessarily founded on the premise that the *ownership* of the executive rights in the Grantors' retained mineral interest was part of "the Property" *conveyed* to Meader in the 1981 Deed. But the plain language of the deed refutes that premise.

The 1981 Deed specifically defines the Property it conveys:

[Grantors] do GRANT, SELL and CONVEY unto MEADER CONSTRUCTION CO., INC. (herein referred to as "Grantee") all that certain real property situated in Bandera County, Texas described within Exhibit "A" attached hereto, together with all improvements thereon, all easements appurtenant thereto, all crops, trees and vegetation growing thereon, all right, title and interest of Grantors in and to any land lying in the bed of any roads or waterways adjacent thereto, all water rights associated therewith, *and one-half (1/2) of all oil, gas and other minerals and **related** executory rights and interests **associated therewith** currently held by* Grantors (all of which is collectively referred to herein as "the Property").

(Emphasis added).

Focusing solely on the mineral interests, the only executive right included in the Property *conveyed* is the executive right in the one-half mineral interest sold to Meader—"*related* executory rights and interests *associated therewith*." (Emphasis added). The plain meaning of "related" and "associated therewith" limits "executory rights and interests" to those attached to the one-half mineral interest being conveyed. *See Hysaw*, 483 S.W.3d at 13; *Dorsett*, 164 S.W.3d at 662. The Property, as defined, does not include ownership of either the remaining one-half mineral interest or the executive rights in the Grantors' minerals, both of which are expressly reserved to, and retained by, the Grantors:

> Grantors expressly reserve and retain unto themselves one-half (1/2) of all oil, gas and other minerals *and related executory rights and interests associated therewith* currently held by Grantors.

(Emphasis added).

We must interpret the deed in a manner that harmonizes its provisions rather than creates conflicts between those provisions. *See Hysaw*, 483 S.W.3d at 13; *Dorsett*, 164 S.W.3d at 662. For that reason, we cannot read the 1981 Deed as reserving to the Grantors the executive rights in their mineral interest and simultaneously conveying ownership of those executive rights to Meader. Under the unambiguous terms of the 1981 Deed, Meader owned (or held) the executive right only in its own one-half mineral interest and the Grantors retained the executive rights in their collective one-half mineral interest. Consequently, Geary and Falcon's arguments fail insofar as they depend on the 1981 Deed having conveyed to Meader ownership of the Grantors' executive rights.

### 3. Impact of Pan American Petroleum Corp. v. Cain

Two Bow Ranch contends that the 1981 Deed should be interpreted in light of *Pan American Petroleum Corp. v. Cain*, 355 S.W.2d 506 (Tex. 1962), *overruled by Day & Co. v. Texland Petrol., Inc.*, 786 S.W.2d 667 (Tex. 1990), because *Pan American* was the controlling law at the time the deed was executed.

The central question presented in *Pan American* was "whether the power to lease as reserved in a certain deed conveying an undivided mineral interest may be exercised by the heirs of the grantor after the latter's death." *Id.* at 507. The grantor in that case conveyed a one-fourth mineral interest but expressly reserved the right to lease that interest without the joinder of the grantee. *Id.* Based largely on its belief that "the power to lease is not in itself an interest in land," *Pan American* concluded that "the executive right terminates with the death of the original holder

unless there is something to indicate that the parties intended that the power should survive and be exercised by others." *Id.* at 509.

Two Bow Ranch contends that this holding is a circumstance surrounding the execution of the 1981 Deed that may be considered in construing that deed. *See U.S. Shale Energy II, LLC v. Laborde Props., L.P.*, 551 S.W.3d 148, 151 (Tex. 2018) (recognizing that a court may consider circumstances surrounding execution of an unambiguous deed to the extent such circumstances "inform, rather than vary from or contradict, the [instrument's] text" (alteration in original) (quoting *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 767 (Tex. 2018))). Two Bow Ranch further contends that, under *Pan American*, the Provisional Authority was exercisable only by Meader because the deed does not contain any language indicating that the parties intended for that power to be exercised by anyone else. *See Pan American*, 355 S.W.2d at 509.

Geary and Falcon point out that *Pan American* was later overruled by *Day*. *See Day*, 786 S.W.2d at 669. The grantors in *Day* conveyed eighty acres of land to Day, Inc. They reserved a one-half mineral interest, but expressly conveyed all the executive rights. *Id.* at 668. Thus, the grantors "owned a non-executive, one-half mineral interest in the eighty acres and Day, Inc. owned the surface, one-half the minerals, and all of the executive right." *Id.* Day, Inc. then conveyed ten acres of the eighty-acre tract to Shoaf but reserved a one-fourth mineral interest. *Id.* The deed also excepted the one-half mineral interest previously reserved to the original grantors but did not mention the executive right granted to Day, Inc. by those original grantors. *Id.* A dispute later arose concerning the leasing of the ten-acre tract, and Day, Inc. sued for a declaration that it owned three-fourths of the executive right in the minerals under that tract (being the one-fourth Day, Inc. reserved plus the one-half conveyed to it by the original grantors). *Id.*

*Day* concluded, contrary to *Pan American*, that the executive right is a property interest, "[e]ven when it is severed from the other rights or attributes incident to the mineral estate." *Day*,

786 S.W.2d at 669. It quoted with approval the *Pan American* dissent that "the executive right reserved by the grantor 'was a property right, an interest in land, appurtenant to the mineral interest therein conveyed, and for the use and benefit of the mineral interest retained and owned by [the grantor].'" *Id.* (quoting *Pan American*, 355 S.W.2d at 511 (Smith, J., dissenting) (alteration in original)). Thus, *Day* held that the executive right that was severed from the one-half mineral interest reserved by the original grantors and conveyed to Day, Inc. passed under Day Inc.'s later deed to Shoaf because Day, Inc. did not reserve or except that interest from the conveyance. *Id.* at 669–70.

We are not persuaded that either *Pan American* or *Day* controls the analysis in this case. Both cases involved executive rights severed from their related mineral interests, but both cases concerned *ownership*. The grantor in *Pan American* expressly reserved the executive right from his conveyance of a one-fourth mineral interest, i.e., the grantee owned the mineral interest but the grantor owned the executive right. *Pan American*, 355 S.W.2d at 506. The opposite occurred in *Day*: the grantors reserved a one-half mineral interest but expressly conveyed all of the executive right, i.e., the grantor owned the mineral interest but the grantee owned the executive right. *Day*, 786 S.W.2d at 668. In both cases, the question was whether a subsequent conveyance of property by the *owner* of the severed executive right also included that severed executive right.

*Day* noted, "a warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions which reduce the estate conveyed." *Id.* (quoting *Cockrell v. Tex. Gulf Sulphur Co.*, 299 S.W.2d 672, 675 (Tex. 1956)). And, as *Cockrell* observed, "the estate reserved is never included in the grant." *Cockrell*, 299 S.W.2d at 675.

As discussed above, the 1981 Deed establishes that the Grantors retained ownership of the executive right in their one-half mineral interest. The Grantors not only expressly excepted the one-half mineral interest and its related executive rights from the conveyance, they also expressly

reserved that one-half mineral interest and its related executive rights. The ownership of the executive interest in the Grantors' one-half mineral interest was not included in the grant to Meader and that ownership did not pass to Meader under the 1981 Deed. *See Day*, 786 S.W.2d at 668; *Cockrell*, 299 S.W.2d at 675. This case is distinguishable from both *Pan American* and *Day* because it simply does not concern the conveyance of the ownership of an executive right as "one of the 'bundle of sticks' inherent in mineral ownership." *See Nicholson*, 572 S.W.3d at 652.

The 1981 Deed establishes that the Grantors did not convey *ownership* of the executive rights in their retained one-half mineral interest. But, by including the Provisional Authority clause, the Grantors gave Meador conditional permission to *exercise* the Grantors' executive rights, without relinquishing their ownership or own authority to exercise those rights. We turn now to an examination of that Provisional Authority.

### 4. *Exercise of the Grantors' Executive Rights*

The Provisional Authority clause states "Grantee [Meader] may control the executory rights pertaining to the minerals provided the Grantors and Grantee share equally in any and all proceeds related thereto." This sentence comes immediately after the Grantors' reservation of a one-half mineral interest and related executive rights, but it does not limit control to the Grantee's minerals. Instead, it gives Meader authority to "control the executory rights pertaining to the minerals."

Construing the deed as a whole, we conclude "the minerals" means all the minerals: the one-half granted to Meader and the one-half reserved by the Grantors. *See Hysaw*, 483 S.W.3d at 13; *Dorsett*, 164 S.W.3d at 662. This construction is consistent with the Provisional Authority's requirement that "the Grantors and Grantee share equally in any and all proceeds related [to the exercise of the executory rights]."

We cannot construe this Provisional Authority as applying to only the executive rights relating to Meader's one-half mineral interest because that construction would create a conflict with the clause granting Meader one-half of the minerals "and related executory rights and interests associated therewith." *See Hysaw*, 483 S.W.3d at 13; *Dorsett*, 164 S.W.3d at 662.

Given the plain meaning of the word "may," the deed gave Meader conditional permission to exercise the executive rights held by the Grantors, but it did not impose on Meader any obligation or duty to exercise those executive rights. *See Hysaw*, 483 S.W.3d at 13 (apply words' ordinary meanings); *Dorsett*, 164 S.W.3d at 662 (same). As a result, Meader could lease only its one-half mineral interest or, if it so chose, it could lease the entire mineral interest, provided it shared equally with the Grantors any benefit it received from executing a lease for all the minerals.

The question remains, then, whether the Provisional Authority, not being a part of the conveyed Property as defined in the deed, was exercisable only by Meader or whether it passed with the Property through subsequent transfers. We again look to the language of the 1981 Deed.

5.      *"Successors and Assigns Forever" Language*

Geary and Falcon contend that everything granted in the deed is transferable because the deed states that the conveyance is to "Grantee, its successors and assigns forever." But Geary and Falcon read this phrase out of context and, thus, too broadly. *See Hysaw*, 483 S.W.3d at 13 (read terms in context); *Reed*, 534 S.W.3d at 56 (same)

The language on which Geary and Falcon rely is contained in the habendum clause and states as follows: "TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said Grantee, its successors and assigns forever[.]" The Property, as defined in the deed, does not include the Grantors' reserved one-half mineral interest or the associated conditional authority to optionally exercise that executive right over the Grantors' one-half mineral interest. Consequently, the language

"successors and assigns forever" does not apply to the Provisional Authority and does not indicate any intent that the Provisional Authority be assignable. On the contrary, the 1981 Deed's plain language purposefully excludes that authority from the definition of "the Property." Applying a holistic and harmonizing approach and giving effect to the substance of its unambiguous provisions, we conclude the 1981 Deed did not make the Provisional Authority assignable but instead, it gave that conditional authority solely to Meader. *See Hysaw*, 483 S.W.3d at 8, *Luckel*, 819 S.W.2d at 462. In sum, the 1981 Deed's "successors and assigns forever" language does not support Geary and Falcon's argument that the Provisional Authority is assignable.

*6.     Assignment of the Provisional Authority as a Contract Right*

Geary and Falcon next assert that the Provisional Authority is assignable because "a contract is generally assignable." *See Vernor v. Sw. Fed. Land Bank Ass'n, FLCA*, 77 S.W.3d 364, 366 (Tex. App.—San Antonio 2002, pet. denied).

But we need not decide this issue because, even if the Provisional Authority was assignable as a contract right, it would not be exercisable by Two Bow Ranch unless it was in fact assigned as a contract right from Meader to Bandera Game Ranch and then from Bandera Game Ranch to Two Bow Ranch. The summary judgment evidence conclusively establishes that it was not assigned either to Bandera Game Ranch or to Two Bow Ranch.

The 1991 deed from Meader to Bandera Game Ranch and the 1999 deed from Bandera Game Ranch to Two Bow Ranch each convey the Property, except for "[o]ne-half (1/2) of all oil, gas and other minerals of every character in and under the Property reserved by B.M. Rankin, Jr., W.K. McWilliams, Jr. and Joseph W. Geary." Neither deed makes any mention of the Provisional Authority or of the executive rights in the reserved one-half mineral interest.

As discussed at length above, the 1981 Deed establishes that the Provisional Authority was not included in the Property conveyed in fee simple to Meader. It therefore did not pass through

subsequent conveyances as "part and parcel" of that Property. Although Geary and Falcon argue that the Provisional Authority could be assigned independently of the Property as a contract right, the 1991 and 1999 deeds do not contain any such assignment, and Geary and Falcon do not contend that any other document exists that contains any such assignment.

### 7. Conclusion on Transfer of the Provisional Authority

The 1981 Deed did not convey to Meader the Grantors' executive rights in their reserved one-half mineral interest. The Grantors' retained executive rights therefore did not pass with the Property when it was conveyed to Bandera Game Ranch and, ultimately, to Two Bow Ranch. Regardless of whether the Provisional Authority given to Meader could be independently assigned as a contract right, the summary judgment evidence establishes that it was not, in fact, independently assigned.

Because the Provisional Authority was never granted, assigned, or transferred to anyone but Meader, the trial court did not err by granting summary judgment declaring that "any executive right or power related to Plaintiffs' reserved mineral interests" could be exercised only by Meader, and that Two Bow Ranch "had no executive rights or powers under the 1981 Warranty Deed, and owed no corresponding duty to Plaintiffs with regard to leasing of mineral interests at issue in this case." We overrule Appellants' first issue.[4]

---

[4] In their fifth issue, Geary and Falcon reiterate their position that the trial court's ruling is wrong. They also challenge that ruling as "not a good policy approach" and a possible source of future confusion, litigation, and injustice. Geary and Falcon's briefing on this issue does not cite any legal authorities and does not offer any substantive analysis. Their fifth issue is waived. *See* TEX. R. APP. P. 38.1(i) (requiring the brief to contain clear and concise argument for contentions made, with appropriate citations to authorities); *Lance v. Robinson*, 543 S.W.3d 723, 732 (Tex. 2018). In their sixth issue, Geary and Falcon cite *Coker v. Coker*, 650 S.W.2d 391 (Tex. 1983), for the principle that, "[w]hen a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue." *Id.* at 394. This principle has no application here because the 1981 Deed is not ambiguous. We overrule Appellant's sixth issue.

**B.      Scope of the 2011 Lease**

In their second issue, Geary and Falcon contend that, because the 2011 Lease to Whiting does not affirmatively state that it is limited to Two Bow Ranch's one-half mineral interest in the Property, it effectively leased the entire mineral interest.  They further contend that Two Bow Ranch therefore exercised Geary and Falcon's executive right and, under the terms of the 1981 Deed, it must share with them the bonus it received for entering the 2011 Lease.

Two Bow Ranch asserted in its motion for summary judgment that the 2011 Lease extended only to its own one-half mineral interest.  To the extent that the trial court did not explicitly rule on this ground, we may nonetheless consider it as necessary for final disposition of this appeal and in the interest of judicial economy.  *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996).

It is fundamental that "a deed can pass no greater estate than that owned by the grantor," *Cockrell*, 299 S.W.2d at 675, and "[a] mineral lease grants a fee simple determinable to the lessee," *BP Am. Prod. Co. v. Red Deer Res., LLC*, 526 S.W.3d 389, 394 (Tex. 2017).  Under these two principles, Two Bow Ranch could not lease to Whiting a greater mineral estate than it owned. Geary and Falcon urge that Two Bow Ranch could, and did, convey the lease rights in their retained mineral interest because Two Bow Ranch held the executive rights over the entire mineral interest.  But we have determined that the 1981 Deed did not convey the Grantors' executive rights to Meader, so Two Bow Ranch could not have obtained those rights through Meader.  We have further determined that Two Bow Ranch did not separately obtain the Provisional Authority because that right was never transferred by Meader to Bandera Game Ranch or from Bandera Game Ranch to Two Bow Ranch.

Two Bow Ranch had no authority to exercise Geary and Falcon's executive rights.  Two Bow Ranch could exercise only its own executive rights and lease only its own mineral interest.

*See Cockrell*, 299 S.W.2d at 675 (noting that a grantor "can pass no greater estate than that owned by the grantor"). The 2011 Lease anticipated this circumstance and provided that any payments under the lease would be prorated accordingly:

> If this Lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said Land than the entire and undivided fee simple estate (whether Lessor's interest is herein specified or not), the royalties and other monies accruing from any part as to which this Lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by the Lease, bears to the whole and undivided fee simple estate therein.

Thus, the lease bonus paid to Two Bow Ranch is attributable only to the one-half mineral interest in the Property owned by Two Bow Ranch.

The summary judgment evidence conclusively establishes that Two Bow Ranch did not have the authority to lease Geary and Falcon's one-half mineral interest and, as a consequence, the 2011 Lease does not include that mineral interest. We overrule Appellants' second issue.

### SUMMARY JUDGMENT DENYING GEARY AND FALCON'S CLAIMS

#### A.    Excess Summary Judgment Relief

A court may grant summary judgment only on grounds expressly stated in the summary judgment motion. *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (citing TEX. R. CIV. P. 166a(c)). "Granting a summary judgment on a claim not addressed in the summary judgment motion therefore is, as a general rule, reversible error." *Id.* (citing *Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983) (per curiam)). But the supreme court has recognized that such an error "is harmless when the omitted cause of action is precluded as a matter of law by other grounds raised in the case." *Id.* at 297–98.

In its motion for summary judgment, Two Bow Ranch sought judgment as a matter of law on its own affirmative claims for declaratory judgment. It also sought a take-nothing judgment on Falcon's affirmative claims based on its assertion that there was no evidence that Falcon was a

successor-in-interest to any of the Grantors' interests in the 1981 Deed. Two Bow Ranch's motion did not otherwise challenge Geary and Falcon's affirmative claims. The trial court nevertheless ordered that Geary and Falcon take nothing on all their claims. This was error. *See id.* at 297.

However, this court may not reverse a judgment on grounds not raised and argued on appeal. *San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 209–10 (Tex. 1990). Thus, "to preserve the error in granting excess relief, the appellant must bring forward [an issue] complaining of the error, or, at the very least, argue in [its] brief that excess relief was improperly granted." *Toonen v. United Servs. Auto. Ass'n*, 935 S.W.2d 937, 942 (Tex. App.—San Antonio 1996, no writ) (citation omitted), *abrogated on other grounds by USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479 (Tex. 2018); *accord Beathard Joint Venture v. W. Hous. Airport Corp.*, 72 S.W.3d 426, 436 (Tex. App.—Texarkana 2002, no pet.).

In their opening brief, Geary and Falcon do not raise an issue specifically asserting that the trial court erred by granting excess relief. However, they argue that "[i]t was reversible error to deny Plaintiffs a jury trial" on issues of breach of contract, breach of fiduciary duty, and attorney's fees. They also argue in their reply brief that the summary judgment order granted relief on grounds not raised in Two Bow Ranch's summary judgment motion. We conclude that Geary and Falcon have adequately raised the issue of excess relief. *See Toonen*, 935 S.W.2d at 942.

Geary and Falcon's assertion that they are entitled to a trial on their affirmative claims for breach of contract, breach of fiduciary duty, and attorney's fees are addressed in their third, fourth, and seventh issues. We will address each to determine whether the grant of excess relief was reversible error. *See Magee*, 347 S.W.3d at 297–98.

**B.      Claim for Breach of Contract and Breach of Fiduciary Duty by Failure to Lease**

Geary and Falcon assert in their third issue that, by leasing their mineral interest without sharing the lease bonus, Two Bow Ranch breached a duty owed to them under the 1981 Deed.

This claim is precluded as a matter of law because the 1981 Deed did not impose any duties on Two Bow Ranch regarding the leasing of Geary and Falcon's mineral interest and the 2011 Lease extends only to Two Bow Ranch's one-half mineral interest. *See id.* The trial court's error in granting excess relief on the claim of breach of a duty to share the lease bonus based on the 1981 Deed was harmless. *See id.*

Geary and Falcon also argue that Two Bow Ranch breached an independent fiduciary duty owed to them as holder of their executive rights. Relying on *Manges v. Guerra*, 673 S.W.2d 180 (Tex. 1984), they urge that the law recognizes a fiduciary duty that "requires the holder of the executive right . . . to acquire for the non-executive every benefit that he exacts for himself." *Id.* at 183. Consequently, if Two Bow Ranch leased only its own one-half mineral interest, then it had a duty to lease Geary and Falcon's mineral interest at the same time on the same terms.

The lynchpin of Geary and Falcon's claim is that Two Bow Ranch is the holder of their executive right. This claim is therefore precluded as a matter of law because Two Bow Ranch had no executive rights or powers over Geary and Falcon's mineral interest under the 1981 Deed. Thus, the trial court's error in granting excess relief on the claim of breach of a fiduciary duty to lease was harmless. *See Magee*, 347 S.W.3d at 297–98. We overrule Appellants' third issue.

## C. Claim for Breach of Fiduciary Duty by Failure to Inform

Geary and Falcon's next contention is that, even if Two Bow Ranch leased only its own one-half mineral interest, and even if it had no duty to lease Geary and Falcon's one-half mineral interest, Two Bow Ranch nevertheless had a duty to inform them that it was leasing Two Bow Ranch's own interest. The source of this duty, they argue, is a confidential relationship between the parties giving rise to an informal fiduciary relationship. *See Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005) (recognizing that certain informal relationships may give rise to a fiduciary duty). They contend that this confidential relationship is evidenced by the parties' prior dealings in

connection with Two Bow Ranch's 2001 lease to Devon SFS Operating, Inc. and its 2006 lease to Parke Energy.

The Rules of Civil Procedure provide that summary judgment shall be rendered on pleadings "on file at the time of the hearing, or filed thereafter and before judgment with permission of the court." TEX. R. CIV. P. 166a(c); *accord Lance v. Robinson*, 543 S.W.3d 723, 732 (Tex. 2018). An examination of Geary and Falcon's live pleading reveals that they did not allege any claim based on a confidential or informal fiduciary relationship.[5]

In their reply brief, Geary and Falcon quote excerpts from their live pleading alleging breaches of fiduciary duties. But the fiduciary duty asserted in each of these allegations was a duty arising from the 1981 Deed.

Geary and Falcon also point to language in their live pleading referring to Two Bow Ranch's 2006 lease with Parke Energy. But the context of that reference was to show that Two Bow Ranch was aware of Geary and Falcon's one-half mineral interest, not to show the existence of a confidential or informal fiduciary relationship. In fact, Geary and Falcon's live pleading does not make any reference whatsoever to a confidential or informal fiduciary relationship, any duty arising from such a relationship, or the breach of any such duty.

Similarly, Geary and Falcon did not assert the existence or breach of a fiduciary duty arising from a confidential or informal fiduciary relationship in their summary judgment response. The issue was simply never before the trial court.

The trial court could not have granted excess relief in relation to a claim that did not exist at the time the court rendered judgment. *See* TEX. R. CIV. P. 166a(c); *Lance*, 543 S.W.3d at 732.

---

[5] Geary and Falcon state that they included the issue in their proposed jury charge, but they do not cite any authority holding that a proposed jury charge is a pleading for purposes of identifying the parties' live claims in the summary judgment context. *See* TEX. R. CIV. P. 166a(c) (summary judgment); TEX. R. CIV. P. 278 (restricting questions, instructions, and definitions in the charge to those "raised by the written pleadings and the evidence").

Further, Geary and Falcon cannot assert this breach of fiduciary duty claim for the first time on appeal. *See Lopez v. Ensign U.S. S. Drilling, LLC*, 524 S.W.3d 836, 846 n.8 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (refusing to address issue not raised in live pleading or summary judgment response); *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 142 (Tex. App.—Dallas 2012, no pet.) (same). We overrule Appellants' fourth issue.

## D. Claim for Attorney's Fees.

In their seventh issue, Geary and Falcon contend they are entitled to recover attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001; *Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015). But it is well-established that "[t]o recover attorney's fees under section 38.001, a party must prevail on the underlying claim and recover damages." *Ventling*, 466 S.W.3d at 154.

As discussed above, Geary and Falcon's breach of contract claim is precluded as a matter of law because the 1981 Deed imposed no duties on Two Bow Ranch in regard to leasing Geary and Falcon's one-half mineral interest. This, in turn, precludes Geary and Falcon's claim for attorney's fees under section 38.001 because they are not prevailing parties on their contract claim. *See Ventling*, 466 S.W.3d at 154. The trial court's error in granting excess relief on this claim was harmless. *See Magee*, 347 S.W.3d at 297–98.

In their seventh issue, Geary and Falcon also state "[i]t has been held that fees paid attorneys may be considered in fixing the amount of punitive damages in cases involving fraud and malicious conduct." *Fitz v. Toungate*, 419 S.W.2d 708, 710 (Tex. App.—Austin 1967, writ ref'd n.r.e.). Geary and Falcon offer no argument or analysis applying this statement to the facts of this case or explaining how it demonstrates reversible error. *Contra* TEX. R. APP. P. 38.1(i) (briefing requirements); *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 126 (Tex. 2018) ("A brief must provide citations or argument and analysis for the contentions and failure to do this can

result in waiver."), *cert. denied*, 140 S. Ct. 196 (2019). This portion of Appellant's seventh issue is waived. *See* Tex. R. App. P. 38.1(i); *Newsome*, 569 S.W.3d at 126.

We overrule Appellants' seventh issue.

## Conclusion

The summary judgment evidence conclusively establishes that Two Bow Ranch had no executive rights or powers over Geary and Falcon's mineral interest under the 1981 Deed and owed no corresponding duty to Geary and Falcon to lease their one-half mineral interest. The summary judgment evidence further conclusively establishes that the 2011 Lease includes only Two Bow Ranch's one-half mineral interest. Geary and Falcon's affirmative claims are precluded as a matter of law. The trial court's error in granting excess relief in the summary judgment order was harmless. We affirm the trial court's order.

Patricia O. Alvarez, Justice